## No. 5392.

### NICHOLAS CONNELL VS. ALEXANDER HILL.

When one party submits a proposal for a contract to another, and the latter's acceptance of the proposal includes a material modification of the proposal, no contract will result until the modification has been acquiesced in by the party making the proposal.

When a party who is sued in virtue of a contract made by a municipal corporation, denies, in general terms, that the corporation has complied with the law authorizing it to make such a contract, the burden of proof is on him to show that the law has not been complied with. The presumption is that the corporation has acted legally.

When the work of constructing sidewalks on one of the streets in the city of New Orleans has been done under a contract made at the discretion of the Common Council, each owner of property fronting on such street can only be held for two thirds of the cost of the sidewalk in front of his property.

APPEAL from the Fourth District Court, parish of Orleans. *Lynch, J.*

*T. Gilmore & Sons* for plaintiff and appellee.

*Ogden & Hill* for defendant and appellant.

The opinion of the court was delivered by

DEBLANC, J. On the 9th of July, 1872, the council of the city of New Orleans passed the resolution which follows : " The proposal of Nicholas Connell for making brick banquettes, with wooden curbing, on Second street, from Apollo to Claiborne—where not made, at $2.93 per lineal foot complete, and offering security satisfactory to the mayor and administrator of improvements in the sum of $2500, be and the same is hereby accepted—and the mayor directed to enter into contract in behalf of the city, per notarial act before the city notary for the faithful performance of said contract ; provided that, in the notarial act, the contractor shall distinctly disclaim and *relinquish* any recourse upon the

city, in case he shall fail to obtain from the property owners payment for said work."

In obedience to that resolution, Benjamin F. Flanders appeared before the designated notary, on the 15th of July, 1872, and—in the words of the act attested by said officer, "granted, bargained, sold and confirmed unto Nicholas Connell, his heirs and assigns, the contract for the construction of brick sidewalks, with wooden curbs and gutters on both sides of Second street, from Carondelet to Claiborne, wherever the same have not already been made by the property owners, or in course of construction at the date of THIS contract."

That act also provides "that the entire breadth of the sidewalk shall be *paved* with lake bricks—that, after the *pavement* is completed, a coat of at least half an inch of sharp sand shall be spread over its surface. That the contractor shall commence the work ten days after the approval of the adjudication by the city council. That, upon reception and completion of the work, payment shall be made by the property owners upon bills made by the city surveyor, in conformity with section 24 OF THE NEW CITY CHARTER. That the contractor, in case the appropriation in the annual budget or estimate of the expenses for the year in which the surveyor's certificate may be issued, etc., shall be exhausted when said certificate is delivered to said contractor or contractors, shall not apply to the administrator of public accounts for a warrant therefor, until a fund for the payment thereof shall be provided in the budget for the following year."

The last paragraph of the act is as follows: " And said Connell hereby releases and discharges the city from any and all liability connected with said work, and particularly for the payment of the same or any part thereof, in case said Connell should fail or be unable to collect from the property owners THEIR PROPORTION OR SHARE of said work."

On the 9th of July, 1872, a proposal made by plaintiff was accepted by the city council. Their acceptance is before us, and—from its tenor —the proposal then accepted was, exclusively, to construct—at the rate of $2.93 per lineal foot—sidewalks and curbs on Second street. Connell's offer was conditionally accepted by the council. Its resolution is partly in these words :

" In the notarial act, the contractor shall distinctly disclaim and relinquish any recourse upon the city, in case he shall fail to obtain from the property owners, payment for his work."

This was more than one of those unimportant modifications of a contract, the assent to which is necessarily implied. With that modification, the contract which would have resulted from Connell's proposition, and its unconditional acceptance by the council, would have been

widely different from that which resulted from the conditional proposition of the council, and its unconditional acceptance by Connell.

R. C. C. article

The last proposition was not the same which had been submitted by Connell, and—until the 15th of July, when that last one was accepted by him, there was no contract between him and the council. Two days before his acceptance, Alexander Hill had contracted with one William Murray to do the whole of the work which—on the 15th—Connell had agreed to perform. To do that work, to do it, according to the council's specifications, Murray's price was $2.50 per lineal foot—forty-three cents less than that demanded by and allowed to Connell. That fact was immediately brought to the knowledge of the city surveyor, who testified that " he thought he told Mr. Hill that it was impossible for him to give permission to any one to make a banquette, after the contract was sold."

It does not appear when the work was begun by Connell. He was to commence it, at the latest—in ten days after the council's approval of the adjudication. That approval was given on the 9th of July—the modified contract accepted on the 15th, and Connell's work on Second street was undoubtedly begun after defendant's contract with Murray and its notification to the city surveyor. It was completed on or before the 23d of November—for, at that date, the city surveyor delivered to Connell two certificates attesting that fact, and attesting too that, for work done in front of his property and the cost of publishing petitions, Alexander Hill was indebted to said Connell in the sum of $1674.10.

To recover that amount, plaintiff has brought this suit and relies on the council's ordinance, the notarial act of the 15th of July and the surveyor's certificates.

In his answer to plaintiff's demand, defendant denies the allegations on which it is based, and particularly that the city ever complied with the formalities prescribed by law to empower its authorities to improve the streets and make sidewalks, at the expense of the front proprietors. He also relies on the fact that he had employed Murray to do his work, and that said Murray was prevented by plaintiff from executing his agreement.

In support of one of the branches of the defence, Hill's counsel argue that—as they have denied a compliance by the city with the formalities prescribed by law to bind the front proprietors, it was incumbent on plaintiff—if those formalities were fulfilled, to have proven that fact, and that the council's resolution is not, by itself, sufficient to establish the legal existence of the denied authority of the council. We believe otherwise.

In a kindred case, the Supreme Court of the United States said: " It is claimed that the contract is for the borrowing of money and that

the complaint is bad, because it does not aver the sanction of two thirds of the electors of the city. If the fact were so, the consequence would not follow. If the city could make such a contract, with that sanction, the sanction will be presumed until the contrary is shown. The non-existence of the fact is a matter of defence which must be shown by the defendant." Gelpcke vs. City of Dubuque, 1st Wallace, p. 293.

We might have paused and considered a special denial, a denial that a specified formality had been omitted ; for instance, that, as provided by the charter, no petition signed by the proprietors of the locality had been presented to the city council—or, if presented, had not been published in the official journal, etc.; but the indefinite allegation that the formalities required by law to authorize the council's ordinance, have not been complied with, is but the expression of an opinion, which—though it comes from eminent counsel—leaves unremoved an adverse presumption, the presumption that the ordinance was regularly adopted by the city officials.

21st Howard, p. 539.

Had defendant notified, not merely the city surveyor, but the mayor and Connell of the existence of his contract with Murray—had he established that Murray had commenced, or was about to commence the sidewalks, and that he had been prevented by Connell from executing his contract, there can be no doubt that—for said work—plaintiff could have recovered but at the rate of two dollars and fifty cents per lineal foot. He, however, did not establish those facts, and he is liable under the contract of the 15th of July.

He is liable, but for what amount? Is it for the whole of the price claimed by and due to Connell? Is it for the whole of the publication of the owners' petition to the council? We believe not. Under section No. 24 of act No. 7 of the Legislature of 1870, the whole cost of sidewalks constructed at the request of one fourth of the proprietors, was to be borne by them ; but that act was amended in 1871, and the contract of the 15th of July contains expressions and clauses indicating the intention to relieve the city from the responsibility fixed by said amendment.

The 10th section of act No. 48 of 1871, provides " that, when made at the discretion of the council, or upon the petition—not of one fourth of the owners, but the owners of the majority of the property which fronts upon any street or streets, the paving, grading or improving of said streets, shall be assessed and paid as follows, to wit: one third of the cost of paving, grading and improvements in front of the property, and the whole cost of the intersections of other streets with the street or streets so paved, graded or improved, shall be paid by the city, and the remaining two thirds by the owners of the property which fronts upon said grading, paving or improvement."

Connell vs. Hill.

It seems that the pleadings in this case were not prepared under the act of 1871, and—on that account—we have hesitated to construe the contract of the 15th of July 1872, as one which was entered into, and which can be enforced but in accordance with the sections of said act which amend that of 1870 on the same subject. We have carefully compared the apparently conflicting provisions of those statutes, and conclude that defendant is only liable for two thirds of the cost of the sidewalk constructed in front of his property.

It is, therefore, ordered, adjudged and decreed that the judgment appealed from be and it is hereby annulled, avoided and reversed—and, proceeding to render such judgment as should have been rendered by the lower court,

It is further ordered, adjudged and decreed that Nicholas Connell recover of Alexander Hill the sum of eleven hundred and sixteen dollars and six cents, with legal interest thereon from the twenty-eighth day of March (1873) eighteen hundred and seventy-three, with privilege on the property described as follows, to wit : two hundred and ninety-three feet six inches, running feet front on south side of Second street, between Willow and Claiborne streets, by a depth of about two hundred and ninety feet on said lateral streets and two hundred and seventy-six feet six inches, running feet, on south side of Seccnd street, between Magnolia and Locust streets, by a depth of about two hundred and ninety feet on said lateral streets ; the costs of the appeal to be paid by plaintiff, those of the lower court by defendant.