198 So. 768

## ARKANSAS LOUISIANA GAS CO. v. R. O. ROY & CO.

No. 35764.

Oct. 9, 1940.

Rehearing Denied Nov. 4, 1940.

Lee & Lee, of Shreveport, for appellant.

H. C. Walker, Jr., and Robert Roberts, Jr., both of Shreveport, for appellee.

O'NIELL, Chief Justice.

The plaintiff is suing for the price of gas sold to the defendant in the period from October, 1936, to January, 1937. The district court gave the plaintiff a judgment for the amount sued for,—$2,267.27, with interest at 5 per cent. per annum from March 15, 1937. The defendant is appealing from the decision.

Before answering the suit the defendant filed a plea styled "Plea of Prematurity". As this plea presents the main issue in the case, we quote the allegations and the prayer in full,—thus:

"That in the spring of 1938 it [the defendant] had under consideration the drilling for the DeSoto Oil & Gas Company of a well for the discovery of oil and gas in Section Eighteen (18), Township Sixteen (16) North, Range Nine (9) West, Bienville Parish, Louisiana, in which Section the DeSoto Oil & Gas Company was the owner of an oil, gas and mineral lease.

"That the Arkansas Louisiana Gas Company, plaintiff herein, owned oil, gas and mineral leases covering considerable acreage in the vicinity of said Section and the drilling of such a well was considered by it to be advantageous to it, in that the re-

sult of such drilling would show whether or not its leases were in territory productive of oil or gas; that thereupon it was agreed between the defendant and the said DeSoto Oil & Gas Company (both represented by R. O. Roy) on the one hand and the plaintiff on the other hand that if your defendant under contract with DeSoto Oil & Gas Company, and for its account, would drill a well in the Northwest quarter (NW¼) of said Section to the Petit Horizon of the Lower Glen Rose, and pay the gas bill sued upon herein, that it, plaintiff, would assign, without warranty, oil, gas and mineral leases covering 200 acres of land in the vicinity of the said Section Eighteen (18), said acreage to be selected by the plaintiff.

"Respondent shows that, acting upon said agreement, it drilled for the account of the said DeSoto Oil & Gas Company a well in the Northwest quarter (NW¼) of Section Eighteen (18) to the Petit Horizon of the Lower Glen Rose, and called upon the plaintiff to select and assign to it oil, gas and mineral leases covering 200 acres of land in the vicinity of said well, stating to plaintiff that it was ready and willing to pay the bill sued upon herein, simultaneously with the delivery to it of an assignment of leases covering 200 acres, but that plaintiff has failed to deliver or tender for delivery to respondent such an assignment.

"Your respondent shows that until the plaintiff delivers or tenders for delivery to it an assignment, or assignments, of oil, gas and mineral leases covering 200 acres of land in the vicinity of Section Eighteen (18) this suit is prematurely prosecuted, and the exception of prematurity is herein specially pleaded.

"Wherefore, it prays that said exception be sustained and plaintiff's suit stayed until such time as the plaintiff tenders to respondent an assignment of oil, gas and mineral leases covering 200 acres of land, to be selected by plaintiff within the vicinity of Section Eighteen (18), Township Sixteen (16) North, Range Nine (9) West, Bienville Parish, Louisiana, and for general relief."

Counsel for the plaintiff urged the objection that the plea of prematurity was not a sufficient or valid defense. After hearing argument on the objection the judge referred the plea to the merits. The defendant then, answering the suit, admitted having bought the quantity of gas sued for, at the price alleged, and at the times stated in the petition, but denied that the plaintiff was entitled to the amount sued for, which included a stipulated penalty of five per cent for the failure of the defendant to pay the gas bills promptly when they came due. The prayer of the defendant's answer was, first, that the plea of prematurity, which had been referred to the merits of the case, should be maintained and that the suit should be stayed until the plaintiff would tender to the defendant an assignment of mineral leases on 200 acres of land, to be selected by the plaintiff, in the vicinity of Section 18, T. 16 N., R. 9 W.; and, in the alternative, if the court should find the plaintiff entitled to recover on its claim, that the claim for interest and the penalty should be rejected,

and that execution of the judgment for the price of the gas should be stayed pending an assignment by the plaintiff to the defendant of mineral leases on the 200 acres of land, to be selected by the plaintiff, in the vicinity of Section 18, T. 16 N., R. 9 W.

On the trial of the case counsel for the defendant admitted that the amount claimed by the plaintiff as the price of the gas, which was $2,159.30, was correct, but denied that the plaintiff was entitled to the penalty of five per cent, or to both the interest and the penalty. Counsel for the plaintiff then submitted his case. Counsel for the defendant offered in evidence the lease owned by the De Soto Oil & Gas Company, referred to in the plea of prematurity as the lease under which the defendant drilled the well in the NW¼ of Section 18. The defendant objected to the evidence on the ground that the answer to the suit did not set forth a sufficient or valid defense. Stated specifically, the objections to the evidence were: (1) That the allegations in the plea of prematurity were vague and indefinite; (2) that the facts alleged did not warrant the inference that the defendant was to be released from its obligation to pay the bill which it owed, for the gas which it had received, until the plaintiff would assign or offer to assign to the defendant oil and gas leases on 200 acres of land; (3) that the facts alleged in the plea of prematurity showed merely that the alleged agreement on the part of the plaintiff, to assign to the defendant leases on 200 acres of land if the defendant would drill a well in the NW¼

of Section 18, was subject to the further condition that the defendant would pay the gas bill which it owed to the plaintiff; but the obligation to pay the gas bill was not novated, or made dependent upon the plaintiff's carrying out the alleged obligation to assign leases on 200 acres of land in consideration for the defendant's drilling the well in the NW¼ of Section 18; and (4), that a promise or an agreement on the part of the defendant to pay the debt which it already owed, for the gas which had been received, could not serve as the consideration—or as any part of the consideration—for a new contract on the part of the plaintiff.

The judge upheld the objections to the evidence; and, counsel for the defendant reserved a bill of exception, and then announced that, in order to make up the record, he offered in evidence, not only the assignment to the De Soto Oil & Gas Company of the lease embracing the NW¼ of Section 18, but also letters written by the plaintiff to the defendant, setting forth the facts alleged in the plea of prematurity. Counsel for the plaintiff renewed his objections and the judge maintained them. The trial then having come to an end, the judge gave judgment for the plaintiff as prayed for.

It is not contended that the letters which the defendant offered in evidence would have amplified the allegations in the plea of prematurity. On the contrary, the attorney offering the letters in evidence announced merely that he desired "to submit for the consideration of the court letters of the plaintiff in this suit to the de-

fendant in this suit, which set forth the facts alleged in the plea of prematurity." The attorney did not request that the letters should be filed or placed in the record, so as to form part of his exception to the judge's ruling, when the judge had sustained the plaintiff's objection to the evidence. The record is complete without the letters, for if they were in the record they would merely verify the allegations in the plea of prematurity.

■ The plaintiff's complaint that the allegations in the plea of prematurity were vague and indefinite was based upon the several omissions, namely, first, the omission to state the date or place of the alleged agreement on which the plea of prematurity was founded, second, the omission to state who represented the plaintiff in making the agreement, and, third, the omission to state whether the agreement was verbal or in writing. In response to this third complaint it is argued in the brief for the defendant that a written contract, such as the contract under which the plaintiff sold the gas to the defendant, may be modified or abrogated by a subsequent verbal agreement, if the original contract was one that might have been made by verbal agreement or proved by parol evidence. The case of Salley v. Louviere, 183 La. 92, 162 So. 811, is cited to support the proposition. The case does support the proposition, but it is not appropriate to this case because in this case the alleged subsequent agreement, to transfer mineral leases, which are incorporeal immovables, as defined in articles 470 and 471 of the Civil Code, could not have been the subject of a valid verbal agreement, or proved by parol evidence. It is provided in article 2462 of the Civil Code that a promise or an agreement to transfer immovable property—whether corporeal or incorporeal—must be made in writing in order "to give either party the right to enforce specific performance."

The defendant in this case is not demanding specific performance of the alleged agreement of the plaintiff to transfer the mineral leases on the 200 acres of land. For that reason the plaintiff's complaint that the defendant's plea of prematurity is vague and indefinite is a matter of little or no importance. The complaint of vagueness will be important if the defendant in this case sues hereafter for specific performance, or specific enforcement, of the alleged agreement of the plaintiff to transfer the mineral leases on the 200 acres of land, and if the defendant here does not make the necessary or sufficient allegations in the suit for specific performance.

■ The facts alleged in the defendant's plea of prematurity do not warrant the inference that the plaintiff was obliged to transfer the mineral leases to the defendant before the plaintiff could collect the gas bills, which, according to the contract sued on, and according to the allegations in the plea of prematurity, were past due for a year or more when the alleged agreement was made, "in the spring of 1938". If the facts alleged in the plea of prematurity justified the inference that the plaintiff was obliged to transfer the mineral leases on the 200 acres of land

before or at the time of demanding payment of the past-due gas bills, the only appropriate method by which the defendant might have availed itself of the agreement in this suit would have been by way of a reconventional demand for specific performance or enforcement of the alleged agreement. Or perhaps the defendant might have demanded damages for breach of the alleged agreement of the plaintiff to transfer the mineral leases, or might have demanded a dissolution of the contract, under the provision in article 2046 of the Civil Code,—that a resolutory condition is implied in all commutative contracts, to take effect in case either of the parties does not comply with his agreement. But the defendant does not claim that the agreement was terminated by effect of the implied resolutory condition. What the defendant demands in this suit is that the plaintiff shall not be allowed to sue for the amount which the defendant owes for the gas bills until the plaintiff transfers to the defendant the mineral leases on the 200 acres of land. The defendant's plea of prematurity seems to be based squarely upon the concluding phrase in the second paragraph in article 158 of the Code of Practice,—videlicet:

"When the demand is premature, that is to say, when the action has been brought before the debt had become due, the suit must be dismissed, leaving to the party his right to bring his action in due time.

"The same rule must be observed if the object due be demanded out of the place where it was to have been delivered, *or if the obligation be conditional, and its execution be demanded before the condition has been fulfilled."*

We have italicized the words which show that the defendant's plea in this case is simply that its obligation to pay the gas bills is conditional, and that this demand for payment is made before the condition has been fulfilled,—and hence that the suit should be dismissed, leaving to the plaintiff the right to bring the suit on transferring the leases on 200 acres of land. The plea of prematurity is summed up in the last paragraph of its allegations,— thus:

· "Your respondent shows that until the plaintiff delivers or tenders for delivery to it an assignment, or assignments, of oil, gas and mineral leases covering 200 acres of land in the vicinity of Section Eighteen (18) this suit is prematurely prosecuted, and the exception of prematurity is herein specially pleaded."

The agreement, as described in the plea of prematurity, was "that if your defendant * * * would drill a well in the Northwest Quarter (NW¼) of said section * * and pay the gas bill sued upon herein, *that it, plaintiff, would assign * * * mineral leases covering 200 acres of land,"* et cetera. There was nothing in that agreement that prevented the plaintiff from demanding payment of the gas bill at any time after the agreement was made. In fact payment of the gas bill, which was long past due, was a condition precedent to the defendant's demanding an assignment of the mineral leases after drilling the ·test well. The plaintiff did not give the

gas bill in pledge to guarantee that the leases would be assigned to the defendant if the defendant would drill the test well. According to the contract sued on, and annexed to the plaintiff's petition, the gas bills were payable on the 15th day of each month following the month in which the gas was delivered; hence the bills were past due a year or more "in the spring of 1938",—when the subsequent agreement is said to have been made. The defendant concedes in the plea of prematurity that the obligation to pay the gas bill was an unconditional obligation, long past due, when the alleged agreement was made that the plaintiff would transfer the mineral leases on 200 acres of land if the defendant would drill the test well in the NW¼ of Section 18 and pay the gas bill. Hence a renewal of the defendant's promise to pay the gas bill could not be a part of the consideration for the obligation of the plaintiff to transfer the mineral leases. On the contrary, the stipulation that the defendant should pay the gas bill meant nothing more nor less than that the plaintiff would not be obliged to transfer the leases on the 200 acres of land unless and until the defendant would pay the gas bill, even though the defendant should drill the test well in the NW¼ of Section 18. In the case of Monroe Investment Co. v. Ford, 168 La. 475, 122 So. 586, 587, the court declared,—quoting 13 C.J. 351, § 207 [17 C.J.S., Contracts, § 110] in support of the declaration,—that a promise to pay an existing legal obligation could not be a valid consideration for a new contract, "for, if a person gets nothing in return for his promise but that to which he is already legally entitled, the consideration is unreal."

The only way in which the court could maintain the defendant's plea of prematurity would be to interpret the alleged agreement to mean that the plaintiff would have to transfer the mineral leases to the defendant before the plaintiff could demand payment of the past-due gas bill. If the agreement was that the plaintiff's obligation to transfer the mineral leases and the defendant's obligation to pay the past-due gas bill were to be performed simultaneously, the defendant should have answered this suit by consenting to meet its obligation to pay the gas bill and by demanding at the same time that the plaintiff should be condemned to perform its obligation to transfer the mineral leases on the 200 acres of land. The defendant does not set up any such reconventional demand.

It is argued in the defendant's brief that the plaintiff's forbearance, in refraining from demanding payment of the gas bill before the test well was drilled, was a tacit acknowledgment that payment of the gas bill should not be demanded before the plaintiff would transfer the mineral leases on the 200 acres of land. There is nothing in the record to show what effort the plaintiff made—or whether any effort was made—to collect the gas bill during the period from "the spring of 1938" to the day on which this suit was filed,—October 5, 1938. But, while the plaintiff had the right to file the suit at any time after the spring of 1938, the plaintiff was not obliged to file the suit

before the test well would be drilled. The obligation was on the defendant to pay, without a lawsuit, the gas bill which was past due.

■ If the defendant's plea of prematurity should be maintained the obligation of the defendant to pay the gas bill would be extinguished by the plaintiff's refusal to transfer the mineral leases on the 200 acres of land. That would mean that the original obligation of the defendant to pay the gas bill, which was an unconditional obligation, was novated, or was extinguished and a conditional obligation was substituted for it. The only methods by which an obligation can be extinguished are enumerated in article 2130 of the Civil Code, thus: By payment, by novation, by voluntary remission, by compensation, by confusion, by the loss of the thing, by nullity or rescission, by the effect of the dissolving condition, or by prescription. None of these methods can be said to have extinguished or impaired the unconditional obligation of the defendant to pay the gas bill, unless it be novation. But novation is not applicable here because, according to article 2185 of the Civil Code, novation consists of two stipulations,—"one to extinguish an existing obligation, the other to substitute a new one in its place." According to article 2187, "The pre-existent obligation must be extinguished, otherwise there is no novation." And, according to article 2190, novation is not presumed; the intention to novate the existing debt must be shown clearly by the terms of the agreement, or by a full discharge of the original debt. There is nothing alleged in the

plea of prematurity in this case to indicate that either of the parties to the alleged agreement in the spring of 1938 intended to extinguish or impair the unconditional obligation of the defendant to pay the past-due gas bill.

■ Our conclusion is that the judgment appealed from is correct. The objection made by the defendant to the charge of $107.97, or five per cent on the amount of the invoices, seems to be waived, because no reference to this part of the claim was made in the argument of the case, and no mention is made of it in the briefs of either party. It was stipulated in the contract for the sale of the gas that the charge of five per cent would be added to the bill if it was not paid when due. It has not been argued or suggested that this flat charge of five per cent, plus interest at five per cent per annum, constitutes usury, or the compounding of interest. It might be usurious in a case where the demand for payment is made soon after the maturity of the bill; but it does not appear so in this case, where the last of the invoices has been due since March 15, 1937. The interest at five per cent per annum from that date is allowed by article 1938 of the Civil Code, which declares: "All debts shall bear interest at the rate of five per centum per annum from the time they become due, unless otherwise stipulated." And this interest is allowed also by article 2554, which declares: "When the seller has granted to the buyer a term for the payment [of the price], the interest begins to run from the end of that term." Adverting now to the

flat charge of five per cent on the invoices, we deem it sufficient to say that the appellant does not contend that the charge was for additional interest, or that the stipulation in the contract in that respect was violative of a prohibitory law, or against public policy.

The judgment rendered in this case will not affect any right of action that the appellant has had to sue for specific performance of the alleged agreement of the appellee to assign to the appellant the oil and gas leases on 200 acres of land in the vicinity of Section 18, in T. 16 N., R. 9 W., or to sue for damages.

The judgment is affirmed.