O'NIELL, C. J., concurs in the decree and assigns reasons.

O'NIELL, Chief Justice (concurring ir .the decree).

My opinion is that the court should decide first whether the district judge was right in maintaining that, under the separability clause (art. 144) in the Criminal Code, his declaring the second paragraph of Article 32 unconstitutional could not affect the constitutionality of the remaining part—the first and third paragraph—of the article. The defendant in this case is not concerned with the question of constitutionality or unconstitutionality of the second paragraph of Article 32 unless by

declaring that paragraph unconstitutional the court would have to declare the article entirely unconstitutional.

I agree with the district judge that the second paragraph of Article 32 is so separable from the two other paragraphs that the declaring of the second paragraph unconstitutional could not affect the constitutionality of the two other paragraphs; hence I see no necessity in this case for passing upon the constitutionality of the second paragraph. That paragraph is merely a rule of evidence and is not at all indispensable in defining and denouncing the crime of negligent homicide.

For these reasons I concur in the decree in this case.

### 31 So.2d 7

## DAVIDSON v. MIDSTATES OIL CORPORATION.

### No. 38133.

April 21, 1947.

Rehearing Denied May 26, 1947.

Dickson & Denny, of Shreveport, for plaintiff-appellant.

Cook, Clark & Egan, of Shreveport, for appellee.

HAWTHORNE, Justice.

Plaintiff, L. L. Davidson, instituted this suit against the Midstates Oil Corporation for $12,000, alleging a breach by the oil company of a contract to purchase certain oil and gas leases, and alleging that the plaintiff and one Steve Reele had complied with the terms of the contract but that defendant had failed to comply with the terms thereof and had failed to accept the leases, and that due to these facts the oil company was liable under the contract in the amount stated above. From a judgment sustaining an exception of no cause of action plaintiff has appealed.

The alleged basis of plaintiff's suit is a written contract, annexed to, and made part of, his petition. This contract is in the form of a letter dated June 13, 1944, in which Steve Reele agreed to sell, and the defendant, Midstates Oil Corporation, agreed to purchase, oil, gas, and mineral leases covering property situated in De-Soto Parish, Louisiana, designated as Tracts 1, 2, and 3, the consideration for Tracts 1 and 2 being based on said tracts' containing 120 acres, with a total consideration for these two tracts of $14,400, and $600 as consideration for Tract 3 on the basis of this tract's containing 80 acres. The leases covering Tracts 1 and 2 were being acquired by Reele from L. L. Davidson, plaintiff, and his assignment to Reele was to provide for a 1/16 of 7/8 overriding royalty, and Midstates Oil Corporation was to accept the leases subject to this overriding royalty.

In this letter or contract it was agreed that Steve Reele would furnish at his expense complete abstracts covering each of the tracts, and that Midstates Oil Corporation would have its attorneys, Smitherman & Smitherman, examine the title to all three of the tracts and deliver written opinions with reference to each on or before the end of the fifth day after the date of said contract. This contract provided that the opinion of these lawyers concerning the

validity of the titles would be accepted as final. In the event the attorneys should find the title to any of the property or any interest therein to be unmerchantable, Steve Reele was then to have five days in which to meet the requirements set forth in said opinions and to make reasonable efforts to obtain such information or curative instruments necessary in order to comply with the requirements, but on or before the end of said five-day period all information and curative instruments obtained by Steve Reele were to be submitted to the attorneys, at which time they were to write their final opinion, either accepting or rejecting the title to said tracts. Should the title to all of said property be approved and should there be 120 acres in Tracts 1 and 2 and 80 acres in Tract 3, the consideration to be paid Reele was the sum of $15,000. Should, however, any of said tracts contain less than the designated acreage, or should title to an interest in same be not acceptable by the Midstates attorneys, and, in the event defendant accepted title to the interest that was approved, the consideration was to be reduced ratably.

The contract further provided that, should the title to all or a part of said property be approved or accepted, Reele agreed to execute immediately thereafter unto the Midstates Oil Corporation an assignment covering the leases on the tracts to which title was approved or accepted. It further provided that, upon the acceptance of title by the attorneys for the oil company and upon the execution and delivery of the assignments, the oil company was to pay directly to Davidson $100 per acre for the number of acres assigned in Tracts 1 and 2 and to pay the balance of the consideration for such acreage to Reele, after deducting the moneys paid to Davidson.

The Midstates Oil Corporation accepted the terms of this agreement on June 13, 1944, by writing at the foot of the letter "Accepted Midstates Oil Corporation by J. H. Harrell, Agent", and on the same day L. L. Davidson approved and concurred in the agreement by also signing his name to the foot of said letter.

The material allegations of plaintiff's petition are that the contract annexed thereto, the pertinent provisions of which we have set out hereinabove, was entered into by and between the petitioner, L. L. Davidson, Steve Reele, and the Midstates Oil Corporation; that Steve Reele and the petitioner complied with the terms and obligations imposed upon them by the contract and furnished all necessary abstracts and documents required of them; that, after receiving the opinion provided for in said contract from defendant's attorneys, they complied with and met the requirements therein contained according to the terms of the contract; that thereafter petitioner called upon the Midstates Oil Corporation on several occasions and requested it either to accept or to reject the title to said property, as petitioner could sell the leases to other parties, but that the defendant re-

fused to comply with the contract and refused to release petitioner therefrom.

The petition further alleged that the defendant informed plaintiff Davidson that, if he would obtain a release from Steve Reele, it would consider purchasing the leases directly from petitioner, and that petitioner immediately obtained a complete release from Reele, which was delivered to defendant, but that, notwithstanding this fact, the defendant refused to accept said leases; that by reason of the refusal of defendant to release petitioner from said contract or to accept the leases, he was prevented from selling the leases to another party for $100 per acre; that the refusal of the defendant to comply with the terms of the contract and accept the leases rendered defendant liable under the contract to petitioner in the sum of $12,000, the price set up in the contract to be paid to petitioner.

Defendant, Midstates Oil Corporation, excepted to plaintiff's petition on the ground that it stated no cause or right of action. The exception of no cause of action was sustained by the lower court, and plaintiff was granted 10 days in which to amend. Plaintiff thereupon filed a supplemental and amended petition, in which, after reaffirming all the allegations of his original petition, he made the following additional allegations: That Smitherman & Smitherman, defendant's attorneys, furnished a written opinion on or about June 19, 1944, as to Tracts 1 and 2, setting up in this opin-

ion what needed corrections should be obtained; that petitioner and Steve Reele furnished within five days *almost all* of the requirements set forth in the opinion and delivered them within five days, as provided in the contract, to defendant's attorneys; that some of this corrective work was not satisfactory to defendant's attorneys, and that petitioner and Reele sought to furnish all documents suggested by defendant's attorneys for the purpose of perfecting the title after the expiration of the five-day period; that on information and belief petitioner alleged that an extension of time was mutually agreed upon by all parties to the contract; that all parties at that time and for a period of some 20 days were anxious to correct the title to the satisfaction of the attorneys; that by the middle of July the attorneys for the defendant had never written a final report or a final opinion which was to be given or furnished to petitioner or Reele, but that these attorneys on or about the middle of July, 1944, informed the defendant corporation that the corrections and documents furnished by plaintiff and Reele were not sufficient in their opinion to warrant defendant's taking said leases; that thereafter plaintiff, L. L. Davidson, had a conversation with Mr. Harrell, an agent of the defendant corporation, to ascertain whether it desired the leases under the contract, and that he was informed at that time by the agent of the defendant corporation that it desired these leases; that, not having heard from defendant within a few days thereafter, peti-

tioner again called upon the agent of the defendant corporation and was informed at that time that, *if petitioner would eliminate Steve Reele from the contract, defendant would take said leases from petitioner;* that this agreement took place at defendant's office on or about August 1, 1944; that petitioner on the same day secured a complete and full release from Reele and immediately delivered it to defendant and called upon defendant to pay for said leases, but that defendant refused to do so.

To the original and supplemental petitions, the lower court sustained an exception of no cause of action, and plaintiff has appealed from this judgment.

Under the very plain terms of the contract attached to plaintiff's petition, the leases covering Tracts 1 and 2 were being acquired by Reele from plaintiff, L. L. Davidson. According to the contract the total consideration for Tracts 1 and 2 was based on said tracts' containing 120 acres and was the sum of $14,400, or $120 per acre, of which amount the defendant, Midstates Oil Corporation, was to pay directly to the plaintiff Davidson the sum of $12,000, or $100 per acre, and the balance of $2,400, or $20 per acre, to Steve Reele.

An examination of plaintiff's original and supplemental petitions discloses that on or about the middle of July, 1944, defendant's attorneys informed it that the titles to the property were not sufficient, in their opinion, to warrant the defendant in taking said

leases, and that thereafter petitioner, L. L. Davidson, was informed in a conversation on or about August 1, 1944, between him and Mr. Harrell, duly authorized agent of the defendant, that defendant would take the leases to Tracts 1 and 2 if petitioner would eliminate Steve Reele from the contract. The petition then alleged that plaintiff secured a full and complete release from Reele on August 4, 1944, and after delivery to defendant called upon it to pay for said leases, but that defendant refused to do so.

Although the basis of plaintiff's suit is alleged to be the written contract of June 13, 1944, attached to his petition, it is our opinion that the alleged conversation which took place between plaintiff and defendant's agent on August 1, 1944, in which defendant agreed, according to the allegations of the petition, to accept the leases as to Tracts 1 and 2 provided petitioner would eliminate Reele from the contract, forms and constitutes the sole and only basis of plaintiff's suit, and is a different or new contract between plaintiff and defendant herein; for, according to this conversation, defendant agreed to accept only two of the three tracts described in the letter, and the consideration to be paid therefor was changed from $14,400, to be paid to Davidson and Reele, to $12,000 to be paid only to Davidson; or, stated somewhat differently, defendant was to acquire the leases covering these two tracts directly from plaintiff Davidson at a saving of $2,400.

Having concluded that the parties to this suit entered into a new contract, we next pass to the question of whether plaintiff's failure to allege that this contract was in writing is fatal to his cause of action.

It is well settled that a contract to purchase or sell real property to be enforceable must be in writing, and that parol evidence cannot be received over objection to prove the existence of such a contract. In Conklin v. Caffall et ux., 189 La. 301, 179 So. 434, 437, we said:

"* * * a contract to transfer immovable property must be in writing. Rev. Civ.Code, art. 2275. And, according to article 2462 of the Revised Civil Code, as amended by Act No. 27 of 1920, p. 28, a promise or option to sell real estate is not valid unless given in writing. * * *" (All italics ours.) See also In re Industrial Homestead Ass'n, La.App., 198 So. 528.

This brings us to the question of whether an agreement to purchase or sell oil, gas, and mineral leases must be in writing, or whether they can be proved by parol evidence.

Act No. 205 of 1938 reads as follows:

"* * * oil, gas and other mineral leases, and contracts applying to and affecting such leases or the right to reduce oil, gas or other minerals to possession, together with the rights, privileges and obligations resulting or flowing therefrom, are hereby defined and classified as real rights and incorporeal immovable property, and may be asserted, protected and defended in the same manner as may be the ownership or possession of other immovable property by the holder of such rights, without the concurrence, joinder or consent of the landowner, and without impairment of rights of warranty, in any action or by any procedure available to the owner of immovable property or land."

In Arkansas Louisiana Gas Co. v. R. O. Roy & Co., 196 La. 121, 198 So. 768, 770, this court said:

"* * * In response to this third complaint it is argued in the brief for the defendant that a written contract, such as the contract under which the plaintiff sold the gas to the defendant, may be modified or abrogated by a subsequent verbal agreement, if the original contract was one that might have been made by verbal agreement or proved by parol evidence. The case of Salley v. Louviere, 183 La. 92, 162 So. 811, is cited to support the proposition. The case does support the proposition, but it is not appropriate to this case because in this case the alleged subsequent agreement, to transfer mineral leases, which are incorporeal immovables, as defined in articles 470 and 471 of the Civil Code, could not have been the subject of a valid verbal agreement, or proved by parol evidence."

We therefore conclude that, since plaintiff's petition failed to allege that the contract of August 1, 1944, to purchase the oil and gas leases covering Tracts 1 and

2 was in writing, and since parol evidence is not admissible to prove the existence of such a contract, the ruling of the lower court in sustaining the exception of no cause of action was correct.

For the reasons assigned, the judgment appealed from is affirmed; plaintiff-appellant to pay all costs.