66 So.2d 9 (1953)
SERIO
v.
CHADWICK et al.
No. 7926.
Court of Appeals of Louisiana, Second Circuit.
May 29, 1953.
*10 Benton & Moseley, Baton Rouge, for appellant.
Gaharan & Richey, Jena, for appellee.
GLADNEY, Judge.
The plaintiff, Barnett Serio, an oil operator, instituted this suit to be decreed the owner of 2/64ths of a working interest of a mineral lease on a tract of land referred to as the Curtis tract, and which previously had been conveyed by him to the defendant, Carl A. Chadwick, by an instrument of writing dated March 14, 1951. The defendant and Louis Wax, intervenor, have appealed from a decree in favor of plaintiff rendered in consequence of a rule filed by plaintiff for judgment on the face of the pleadings.
For a cause of action plaintiff alleged:
"That by instrument dated March 14, 1951, and recorded in Conveyance Book `22', page 149, records of LaSalle Parish, Louisiana, your petitioner assigned *11 to said defendant a 2/64th part of the working interest in and to certain oil, gas and mineral leases more particularly described in said instrument; that among the leases in which said interest was assigned, was the following:
"Oil, Gas and Mineral Lease from B. F. Curtis et al to Barnett Serio, covering land in LaSalle Parish, Louisiana:
"Northwest Quarter of the Northeast Quarter (NW¼ of NE¼), Section Thirty (30), Township Eight (8) North, Range Three (3) East, forty (40) acres, more or less.
"That under the terms of said assignment assignor was to drill a well on a tract of land referred to in said instrument as the French tract to a depth of 4,200 feet; that the well on the French tract was drilled in accordance with the contract and was abandoned as a dry hole.
"`That paragraph `4' of said assignment reads as follows:
"`After the well referred to in paragraph 2 above shall have been completed, whether as a producer or a non-producer, should Assignor elect to drill other wells on the leases affected hereby, he shall notify Assignee, in writing, to that effect, including in such notice the location of said well, and the depth to which the well is proposed to be drilled. Assignee shall have twenty-four (24) hours from the receipt of such notice, in person or at the hereinafter address of Assignee, to elect to join in or not join in the drilling of such well, such election to be made by written notice mailed or delivered to Assignor Serio on or before the expiration of the twenty-four (24) hour period. If the Assignee fails to elect to join in any such well, or elects not to join in any such well, then Assignee shall lose all right, title and interest in and to the leasehold estates except for the unit or units in which he has theretofore participated. In such event, Assignee shall promptly upon demand, execute in favor of Assignor, Serio, a conveyance of all of Assignee's right, title and interest in and to the leases except the unit or units in which Assignee has theretofore participated.'
"That the above provision and all other provisions of said assignment are more fully set out in a certified copy of the aforementioned act of assignment which is attached hereto and made a part hereof the same as if copied in full herein.
"That in accordance with the provision of said assignment and particularly in accordance with the provision of paragraph `4' thereof as set out hereinabove, your petitioner, on January 10, 1952, gave to said defendant written notice that your petitioner intended to drill a well on the Curtis tract or the Northwest Quarter of the Northeast Quarter, Section Thirty, Township Eight North, Range Three East; that a copy of a letter giving this notice which was delivered to said defendant personally is attached hereto and made a part hereof; that said defendant refused to participate in the drilling of said Curtis well but in violation of his contract with your petitioner has also refused, despite repeated amicable demands, to convey to your petitioner his interest in said Curtis lease as provided for in paragraph `4' of the contract above quoted.
"That your petitioner is entitled, under the terms of said contract, to have the assignment from him to the said Carl A. Chadwick annulled, voided and set aside and to be decreed the owner of the 2/64ths interest in and to the mineral leases therein described except the French lease and particularly your petitioner is entitled to be recognized as the owner of said 2/64ths interest in and to the B. F. Curtis et al lease which is described above. That except for the B. F. Curtis lease, all of the other leases listed in said assignment have expired and that your petitioner waives any right to have same retransferred to him."
*12 Attached to and a part of the petition is the instrument in question, paragraphs 1, 10 and 11 of which are set forth:
"For and in consideration of the sum of $1,000.00, cash in hand paid, the receipt of which is hereby acknowledged, Assignor, Barnett Serio, does hereby sell, assign, transfer, convey and deliver to Assignee an undivided 2/64 interest of Assignor's right, title and interest in and to the working interest in and to the leases described in Exhibit `A' hereto, the interest of Assignee to bear its proportionate part of the royalty and also the overriding royalty (if any) chargeable against any lease or leases described in Exhibit `A', to have and to hold unto Assignee, his successors and assigns in accordance with the terms of said leases, and the terms of the assignments thereof under which Assignor holds, and in accordance with the terms of this agreement."

* * * * * *
"Any notice required or permitted to be given under the terms hereof to either party shall be addressed as follows:
"To Assignor Serio:
"To Assignee.
"This agreement shall extend to and be binding upon the parties hereto, their heirs, executors, administrators, successors and assigns."
Also attached to the petition is an agreement in writing between Barnett Serio and Carl A. Chadwick styled "Accounting Procedure (Unit and Joint Lease Schedule), which contract is for the purpose of allocating development and operating charges of the leases affected. The pertinent portion of the letter of January 10, 1952, wherein Serio gave notice to Chadwick pursuant to paragraph 4 of the mineral conveyance above referred to, was as follows:
"Our joint interest lease on the B. F. Curtis tract, in the NW¼ of NE¼ section 30, T-8-N, R-3-E, 40 ACRES more or less, which we own in La-Salle Parish, Louisiana, will expire during the month of January, 1952, and it is necessary that we drill a well in order to validate and extend the prescription of the lease.
"I propose to drill a well to test the known sand in the area on this tract to a depth not to exceed 5,000 feet, and I estimate that this well will cost approximately $25,000 to see the sand.
"It will be appreciated if you will advise me within twenty-four (24) hours if you would like to participate in this well as far as your interest extends. In the event you do not care to participate in the above described lease I would like to exercise my right and option as expressed in paragraph four of my agreement with you, dated the 14th day of March, 1951, which is as follows: (Here is copied paragraph 4, being the same paragraph reproduced hereinabove)."
Plaintiff's suit was instituted on August 7, 1952. Answer was filed on September 13, 1952, and the petition of intervention of Louis Wax was filed on October 9, 1952.
The petition of intervention adopts the identical defense asserted by respondent Chadwick and differs materially only in that intervenor tendered and deposited his check for $1,000 with the Clerk of Court as a judicial legal tender to the plaintiff of said amount. Intervenor prays for judgment decreeing him to be the owner of 2/64ths working interest in the Curtis lease.
The defense sought to be established and set forth in respondent's answer and in the petition of intervention is that in the summer of 1951, Mr. Louis Wax, for whom defendant acted as agent, discontinued the practice of honoring drafts drawn by defendant and that plaintiff was informed of this fact and was well aware thereof thereafter and prior to the time the attempted notice was given under the agreement of March 14, 1951; that during the early part of the year 1952, defendant was informed that plaintiff intended to drill on the Curtis lease in accordance with the March 14, 1951, agreement, and defendant again informed plaintiff that defendant was not authorized to act upon the matter and to contact Mr. Louis Wax directly and personally; that thereafter plaintiff handed defendant a written notice of the drilling plan and *13 stated at the time that if defendant did not want to act under the notice, defendant should execute the conveyance of interest to plaintiff provided for in the agreement; that plaintiff was again advised to personally contact Mr. Louis Wax and to ascertain from him if he wanted to participate under the agreement; and that plaintiff did nor contact Mr. Wax nor did anyone else authorized to act for plaintiff contact Mr. Wax at any time. It is further alleged that thereafter plaintiff, without further action, proceeded to drill on the Curtis tract with the result that a well was brought in on February 16, 1952, producing on a commercial basis.
After the issue was joined by answer of Chadwick, plaintiff filed on September 15, 1952, a rule for judgment on the face of the pleadings. After consideration by the court the rule was made absolute and judgment rendered November 20, 1952, decreeing Serio to be the owner of the fractional part of the lease in controversy.
Appellants complain of error in the decision appealed from: first, because it determined the property rights in controversy herein were real rights rather than personal rights, which was prejudicial to them, as the latter classification would allow parol evidence to establish the allegations of the answer and petition of intervention; second, it is contended it was improper to make absolute the rule for judgment on the pleadings when the only basis therefor was that the evidence to prove the allegations of the answer and petition of intervention would be inadmissible; and, third, the ruling should have found that after plaintiff was aware intervenor was the principal and defendant the agent, it was incumbent upon plaintiff to deal with intervenor.
The first contention of the appellants is that the trial court was in error in holding that the right, interest or obligation herein involved is not a real right, but a personal right not affected by LSA-R.S. 9:1105, Act 205 of 1938, as amended, which provides:
"Oil, gas, and other mineral leases, and contracts applying to and affecting these leases or the right to reduce oil, gas, or other minerals to possession, together with the rights, privileges, and obligations resulting therefrom are classified as real rights and incorporeal immovable property. They may be asserted, protected, and defended in the same manner as may be the ownership or possession of other immovable property by the holder of these rights, without the concurrence, joinder, or consent of the landowner, and without impairment of rights of warranty, in any action or by any procedure available to the owner of immovable property or land. This Section shall be considered as substantive as well as procedural so that the owners of oil, gas and other mineral leases and contracts within the purpose of this Section shall have the benefit of all laws relating to the owners of real rights in immovable property or real estate." As amended Acts 1950, 2nd Ex.Sess., No. 6, Sec. 1.
The above statute in its original form was enacted to erase the ruling of the Supreme Court of Louisiana in Gulf Refining Co. of Louisiana v. Glassell, 1936, 186 La. 190, 171 So. 846. The issue there involved was whether a mineral lessee could bring a petitory action against a subsequent lessee or trespasser, without being joined by his lessor. The question was purely procedural. In holding a mineral lessee could not bring the petitory action, the lease was classified as a personal right. Prior to the Glassell case our jurisprudence had consistently held an oil and gas lease to be a real right. After Act 205 of 1938 became law there was some conflict in the decisions as to whether the act made changes in the substantive law. However, following the decision in Arnold v. Sun Oil Co., 1949, 218 La. 50, 48 So.2d 369, wherein it was held that mineral leases and contracts applying thereto were not protected by the laws of registry because they are personal, not real rights, the legislature voided the ruling in the Arnold case by amending the act, Acts 1950, 2nd Ex.Sess. No. 6, to provide the statute should be considered substantive as well as procedural. There was also enacted Acts 1950, 2nd Ex.Sess. No. 7, prescribing, inter alia, that written instruments relating to immovable property shall have no effect on third parties until filed for registry, nor *14 shall such parties be bound by secret claims or equities, nor other matters outside the public records.
The argument advanced that the assignment of March 14, 1951 conveyed only a personal right is refuted by paragraph (1) of the instrument, wherein it is recited that for a named consideration appellant conveyed 2/64ths interest of his title in the leases described in Exhibit "A", including the Curtis lease, a portion of which is the subject matter of this litigation. The agreement further provided for its extension to and binding effect upon the parties thereto, their heirs, assigns, etc.
The so-called assignment is, in fact, a sub-lease. In Wier v. Glassell, 1950, 216 La. 828, 44 So.2d 882, 885, 886, plaintiff sought to have himself recognized as the owner of a 1/16th over-riding royalty on certain tracts of land. In discussing the nature of the instrument, the court, 44 So.2d at pages 885, 886, said:
"It may be proper to state at the outset that the agreements by which the leases were assigned, although styled and referred to as `assignments', they are really acts of sub-leases of the various leases which plaintiff had taken on the properties involved, to the defendant who then became a sublessee. The distinction between the two is pointed out in the case of Roberson v. Pioneer Gas Co., 173 La. 313, 137 So. 46, 48, 82 A.L.R. 1264, wherein it is stated that:
"`In an assignment, the assignor transfers his entire interest in the lease in so far as it affects the property on which the lease is assigned; whereas, in a sublease, the original lessee, or sublessor, retains an interest in the lease in so far as it affects the property subleasedby imposing some obligation upon the sublessee in favor of the sublessor, such as an obligation to pay additional rent to the sublessor.'
"Act No. 205 of 1938, provides:
"`* * * that oil, gas and other mineral leases, and contracts applying to and affecting such leases or the right to reduce oil, gas or other minerals to possession, together with the rights, privileges and obligations resulting or flowing therefrom, are hereby defined and classified as real rights and incorporeal immovable property * * *.'
"Thus, we are here dealing with contracts relating to an incorporeal immovable, the transfer of which, under Article 2275 of the Revised [LSA] Civil Code, `must be in writing'.
"The sub-leases in this case are in writing and certified copies are annexed by the plaintiff to his petition. Regardless therefore of what he has alleged with reference to them, they are controlling over his allegations and in construing them the court is limited to what is contained in them unless it should decide that there are some ambiguous terms and clauses for the interpretation of which it might have to resort to some other means of construction."
C/f Smith v. Sun Oil Co., Inc., 1928, 165 La. 907, 116 So. 379.
Continuing, 44 So.2d at page 888, the court discusses the attempt of the plaintiff therein to establish his title by parol evidence just as intervenor is endeavoring to do in the instant case:
"If we had doubt as to the meaning of the terms of the agreements and found ambiguity in any of their clauses, it might well be that plaintiff should be permitted to resort to parol proof of such custom as he alleges, but we find nothing ambiguous in their language nor in the terms and conditions they contain. On the other hand, the royalty interest which plaintiff is seeking to have himself recognized as the owner of, being an incorporeal immovable, and being in writing, all as heretofore pointed out, it is clear that parol evidence would not be admissible to show that the parties intended to contract with reference to future leases as well as the leases that were being assigned, nor, indeed, with regard to any other intention than the one expressed in the contracts of assignment themselves. To permit parol evidence of the nature such as plaintiff would want to elicit *15 under the allegations of his petition would be to permit him to prove title to an incorporeal immovable by parol and this he could not do in view of the specific provisions of Articles 2275 and 2276 of the Revised [LSA] Civil Code."
When we observe that the legislature of 1950 by the enactment of Acts 1950, 2nd Ex.Sess. Nos. 6 and 7, has even more exactly defined a real right to embrace just such a conveyance as presented here, intervenor's position that only a personal right is involved appears untenable.
As pointed out above, prior to the Glassell case there was no uncertainty in our jurisprudence that a lease or sublease, or portion thereof, was a real right and as such amenable to the laws applicable to immovables. The validity of those cases has been restored by LSA-R.S. 9:1105. The syllabus of Hanby v. Texas Co. (Lake Front Oil & Gas Co., Intervener), 1916, 140 La. 189, 72 So. 933, is appropos to intervener's effort herein to invest himself through parol evidence with title to property registered in the name of an alleged agent:
"The conveyance of an interest in all the oil, gas, and other minerals, supposed or hoped to be found beneath the surface of a particular tract of land, though it conveys no title to any specific oil or gas, carries with it the right to explore the land in search of those minerals, which, quoad the land, is a jus in re, and, its classification being determined by the character of the object to which it is applied, it falls within the category of immovables, and the title thereto cannot be destroyed, and a new title created in its stead, by parol evidence, on the ground that it was acquired by an agent, in his own name, instead of the name of his principal." (Emphasis supplied.)
As in the Hanby case just quoted, where the assignee was the alleged agent, it is thus in the instant case. Intervenor is seeking to prove that the obligations and rights involved in the contract of March 14, 1951, are his and not Chadwick's, and that title should be invested in him, and he so prays for such recognition in his petition of intervention. The only factual proof thereof comprehended by the answer and petition of intervenor is verbal testimony which clearly could not be received in a judicial proceeding by reason of LSA-C.C. Articles 2266, 2275, 2276 and 2240. See also Davidson v. Midstates Oil Corporation, 1947, 211 La. 882, 31 So.2d 7.
Parol evidence is inadmissible to prove that the person whose name appeared in a deed was only the agent and not the purchaser. See: Fuselier v. Fuselier, 1850, 5 La.Ann. 132; Hackenburg v. Gartskamp, 1878, 30 La.Ann. 898; Stierle v. Kaiser, 1893, 45 La.Ann. 580, 12 So. 839; Sladovich v. Glaser, 1922, 150 La. 918, 91 So. 297.
It is next argued appellants should have been permitted to supplement their pleadings and propound interrogatories to plaintiff in order to adduce written evidence to establish their defense, but to the contrary, the ruling of the court prevented such action. Further, they assert plaintiff's remedy was by objection to the evidence, not by judgment on the pleadings. In support of these contentions counsel refer to Lemoine v. Lacour et ux., 1948, 213 La. 109, 34 So.2d 392, holding that under our jurisprudence, in the interest of justice, the technical rules of pleading have been greatly relaxed, and a litigant now is accorded the privilege of amending his pleadings so as to state a cause of action or defense if he can before determination of the suit. To this doctrine we fully subscribe, but we do not find it applicable in the instant case. In the Lemoine case plaintiff alleged that defendant verbally agreed to sell land to plaintiff. His petition was defective because of omission of allegations which would bring the case within the codal articles declaring a verbal sale of immovable property good against the vendor or vendee who confesses it when interrogated on oath, if the property has been actually delivered. LSA-Civil Code Articles 2275, 2440. The Supreme Court remanded the cause to permit an amendment of the petition. Herein, however, there was no verbal sale. The conveyance was in conventional form. Intervenor alleges no verbal agreement of the nature comprehended by the codal articles. There could be no foundation *16 for propounding such interrogatories to plaintiff.
We observe the pleadings which formed the basis of the judgment declare Chadwick was the agent of the intervenor, but Chadwick alone was designated in the conveyance of March 14, 1951, as the assignee. Certainly, notice to the agent was notice to the principal. Plaintiff could not be asked to risk notice otherwise. The notice of January 10, 1951, scrupulously complied with all legal requirements. It was sufficient.
In Lawrence v. Claiborne, 1949, 215 La. 785, 41 So.2d 680, the defendant excepted to the petition on the ground that plaintiff was without a right or cause of action to attempt establishment of title either by parol or by evidence dehors the authentic act, under which he acquired, basing the exception on Articles 2236 and 2276 of the LSA-Civil Code. The exception was sustained with privilege of amending. Defendant excepted to the supplemental petition and also at the same time filed an answer. When the matter came up for trial, counsel for defendant objected to the reception of any evidence on the ground that plaintiff's petition, as supplemented, failed to state a cause of action. The exception was sustained and the suit dismissed. On appeal the Supreme Court affirmed the judgment of the trial court, quoting from Franton v. Rusca, 1937, 187 La. 578, 175 So. 66, 68, to the effect:
"* * * that, in the absence of any allegation of fraud or error, conditions, and stipulations beyond those expressed in an authentic act, and what may have been said before, or at the time of, or since the execution thereof, can be proven only by means of a counter-letter or by the use of interrogatories on facts and articles. Locascio v. First State Bank & Trust Co. of Hammond, 168 La. 723, 123 So. 304; Plaza Amusement Co. v. Frank Rubenstein & Co., Inc., 163 La. 272, 111 So. 702; Glover v. Abney, 160 La. 175, 106 So. 735; Harris v. Crichton, 158 La. 358, 104 So. 114; Rev.Civ.Code, arts. 2236 and 2276."
See also: Ceromi v. Harris, 187 La. 701, 175 So. 462; Scurto v. LeBlanc, 191 La. 136, 184 So. 567; Cernich v. Cernich, 210 La. 421, 27 So.2d 266.
The similarity of the exception of no cause of action in that case to a judgment on the pleadings is obvious inasmuch as an answer was filed by the defendant and given consideration when the exception was maintained. Where the answer manifestly presents every defense available to the defendant and is not sufficient to establish a legal defense, a trial of the case under such circumstances would be vain and burdensome. In such an instance plaintiff's remedy is by rule for judgment on the pleadings as was done in the instant case. The rule is but the counterpart of an exception of no cause of action.
The allegations of the petition of intervention filed by Wax are no broader than the allegations of the answer by Chadwick. Essentially they are the same. To sustain a judgment on the pleadings every reasonable hypothesis upon which the defense can be based must be considered and excluded. West v. Ray, 210 La. 25, 26 So. 2d 221. LSA-R.S.-13:3601(4) provides:
"At any time after the answer is filed the plaintiff may by rule submit to the court the question of his right to a judgment upon the petition and answer. For the purpose of the trial of such rule all material allegations of fact contained in the petition and not denied in the answer, and all allegations of fact contained in the answer, shall be deemed and taken as true, provided, however, that this proceeding by the rule for judgment on the petition and answer shall not lie in any case in which there may be a demand in warranty by the defendant, or in which there has been filed a petition of intervention, or a third opposition, unless the state of the pleadings be such as to justify a judgment at the same time upon the demand in warranty, thepetition of intervention, or third opposition, as the case may be * * *." (Emphasis supplied.)
*17 It is clear from the record that since the defense of intervenor is identical with that alleged by defendant the state of the pleadings is such as to justify a judgment upon the petition of intervention.
Finally, counsels' appeal against the judgment is that as plaintiff was informed that intervenor was defendant's principal, it was incumbent upon him to give a notice direct to intervenor. We do not find the argument valid. The hypothesis is without legal foundation for the reasons above pointed out. It would also seem to be without equitable foundation if we should indulge in such speculation. We have no doubt if the Curtis well had failed to become a producer, the notice given to Chadwick would have been satisfactory to Wax.
For the above reasons we are of the opinion the notice given by Serio was a strict compliance with the stipulation in the written contract and was binding on the intervenor as well as upon defendant. The court a quo correctly held the subject contract to be one affecting real rights within the purview of LSA-R.S. 9:1105, the effect of which is to prohibit the employment of parol evidence to establish title to the affected mineral rights in the name of intervenor. The ruling awarding judgment on the pleadings was proper and is therefore affirmed.
It is ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Barnett Serio, and against the defendant, Carl A. Chadwick, and that the plaintiff is the owner of the 2/64ths working interest assigned by him to the defendant per instrument dated March 14, 1951, and recorded in Conveyance Book "ZZ", page 149, Records of LaSalle Parish, Louisiana, in and to:
"That certain oil, gas and mineral lease executed by B. F. Curtis et al, in favor of Barnett Serio, dated February 6, 1951, recorded in Oil and Gas Lease Book `15', page 421, Records of LaSalle Parish, Louisiana, said lease covering the Northwest Quarter of the Northeast Quarter (NW¼ of NE¼), Section Thirty (30), Township Eight (8) North, Range Three (3) East."
It is further ordered, adjudged and decreed that the defendant, Carl A. Chadwick, has no interest in said lease or the production therefrom by virtue of the assignment referred to in the preceding paragraph, said interest having been forfeited because of defendant's failure to elect to participate in the drilling of a well on the above described lease as provided in the contract of assignment.
It is further ordered, adjudged and decreed that the intervention of Louis A. Wax filed herein be and the same is hereby dismissed and the $1,000 deposited by said intervenor in the registry of the Court be returned to him.
It is further ordered that appellants be taxed with all costs of suit, including costs of this appeal.