On Rehearing
SIMON, Justice.
This is an action for specific performance instituted by the Louisiana State Board of Education, wherein it seeks to obtain from Roy S. Lindsay title to a tract of land in the Parish of East Baton Rouge containing 453 acres, together with all improvements, farm equipment, products and livestock situated thereon. The predicate laid by plaintiff is its timely exercise of an option to purchase granted it by the defendant.
An exception of no cause of action was sustained by the district court, and the suit was accordingly dismissed. Plaintiff appealed to this Court, and on original hearing, this judgment was affirmed, holding that there had not been a legal acceptance of the option to purchase within the stipulated time fixed therein.
We granted a rehearing to review the correctness of our original decree.
The allegations of fact contained in the pleadings, together with the documents contained in the record, which, for purposes of disposing of the exception, must be taken as true, show, in their chronological order, the following.
On October 16, 1953, the defendant granted, in writing, to Verdie Reece Perkins, a licensed realtor of Baton Rouge, operating under the name of Perkins & Sons,, the exclusive right to sell the property in question for a stipulated cash price, said listing to expire as of midnight December 15, 1953, or a period of sixty days from date. On the same date the defendant verbally listed with the agent of the realtor the movables located on said property for a stated price the farm to be sold separately or as one unit with the movables.
On November 16, 1953, the realtor wrote to Dr. Barrow, Director of the Department of Education, recommending the advisability of purchasing said property for the use and benefit of Southern University.
On November 30, 1953, the realtor granted an option to buy, reading as follows:
“Dr. F. G. Clark, Pres.,
Southern University,
Baton Rouge, Louisiana.
Dear Dr. Clark:
“For the sum of Two hundred Fifty Dollars ($250.00)', receipt of which is. hereby acknowledged, we give you the exclusive option to buy the 453 acres, belonging to Roy Lindsay and known as the Bass Place, located 2i/fj miles North of Zachary, Louisiana, and West of the I. C. Railroad in East Baton Rouge Parish, together with all improvements for the price of $67,500.-00 cash, or, with the cattle, livestock, implements, etc., for $77,500.00 cash.
*566 “This option to expire as of Midnight, December 15th, 1953. If sale is passed the $250.00 deposit shall apply on the purchase price of the property.
“Very truly yours,
(Sgd.) V. R. Perkins
V. R. Perkins
as/ listing contract
.Acknowledged: (Sgd.) F. G. Clark”
On December 2, 1953, the defendant, 'Lindsay, in compliance with the request of the realtor, wrote the latter in the language .suggested, agreeing that should Southern University or some other state agency sign a binding agreement to purchase the property within the listing period, or midnight .December 16, 1953, he would grant the acceptor thirty days, or until January 15, 1954, “to complete the sale”. The realtor therein also informed the defendant that the Assistant Attorney General had requested the thirty-day period so as to afford sufficient time “to examine the title, etc.”, but again reiterated that if a binding agreement to purchase was not signed by December 15, 1953, its listing would necessarily expire as of that date.
On December 11, 1953, the Louisiana State Board of Education, as is reflected by the minutes of a meeting held that day, took the following action:
“On motion of Mr. Curry, seconded by Mr. Madison, the Board approved .the purchase of a farm consisting of approximately 453 acres of land including livestock and all equipment for Southern University and requested the Building Authority to purchase this farm complete with the understanding that there will be no reservations and that the Board will acquire the mineral rights.” (Underscoring ours.)
We gather from other documents, particularly plaintiff’s supplemental petition, that on December 14, 1953, Dr. Felton G. Clark, in his capacity as President of Southern University, telephoned Perkins, verbally notifying him of the December 11, 1953, action taken by the plaintiff Board, as above quoted.
It is significant that on the same day, December 14, 1953, the Louisiana State Building Authority, acting through Allison R. Kolb, secretary, and therein styling itself as “vendee”, addressed a purchase agreement to the defendant, Lindsay, subscribed to by two witnesses (but which, as it thereafter appears, was delivered to the realtor), advising the defendant that the State of Louisiana "is offering to purchase from you for the State Board of Education” the land and movables in question and attaching a check in the amount of $1000 to be applied to the purchase price “if this offer is accepted by you”; that in pursuance of the December 11th resolution of plaintiff Board, should the State of Louisiana not accept title thereto, defendant’s only claim for damages would be the forfeiture of the $1000 deposit and that the State of Louisiana would have sixty days *568 from December 14, 1953, to accept title by paying the remainder of the purchase price, this proposed agreement and tendered offer to buy to remain binding and irrevocable until December 21, 1953.
On December 22, 1953, or seven days after the option’s expiration date, the optionee, Dr. Clark, wrote the realtor advising him officially of the action taken on December 11, 1953, by plaintiff Board. This written notice also makes reference to and confirms the telephoned acceptance by the writer as stated above.
On December 23, 1953, a special meeting of the Louisiana State Building Authority was held and a resolution was adopted by a vote of “4 yeas and no nays * * * ”, appropriating the required purchase price.
On December 31, 1953, the defendant, in reply to the realtor’s letter of December 22, 1953,' announcing plaintiff’s action of December 11, 1953, wrote Perkins that he had waited the full sixty-day option period, or until December 16th, without receiving any notice of an acceptance; that on December 21, 1953, Clyde Farr, an agent of the realtor, brought him a document, namely, the purchase agreement dated December 14, 1953, as above mentioned, which he refused to sign, for the reason that it was not a binding acceptance of his option, within the stipulated time, and that as a consequence he had accepted another offer to purchase. The defendant contends, under his exception of no cause of action, that the documents above reviewed do not constitute a written acceptance of the option by plaintiff within the prescribed time limit fixed therein so as to make effective a binding and enforcible contract of sale. He cites and relies on LSA-Civil Code, Articles 1802, 2275, 2462 and on Elmer v. Hart, 121 La. 537, 46 So. 619; Barchus v. Johnson, 151 La. 985, 92 So. 566; Davidson v. Midstates Oil Corporation, 211 La. 882, 31 So.2d 7, and other cases.
It is well settled that a contract to purchase or sell real property, to be en-forcible, must be in writing, and that parol evidence cannot be received over objection to prove the existence thereof.[1]
Article 2462, LSA-C.C., provides that—
“A promise to sell, when there exists a reciprocal consent of both parties as to the thing, the price and terms, and which, if it relates to immovables, is in writing, so far amounts to a sale, as to give either party the' right to enforce specific performance of same.
“One may purchase the right, or option to accept or reject, within a stipulated time, an offer or promise to sell, after the purchase of such option, for any consideration therein stipulated, such offer, or promise can not be withdrawn before the time agreed upon; and should it be accepted within the time stipulated, the contract or agree *570 ment to sell, evidenced by such promise and acceptance, may be specifically enforced by either-party.”
See Conklin v. Caffall, 189 La. 301, 179 So. 434, 437; In Re Industrial Homestead Ass’n, La.App., 198 So. 528; Davidson v. Midstates Oil Corporation, supra. The acceptance or assent of an option to buy, according to the provisions of Article 1802, LSA-C.C., must “be given within such time as * * * the contract shall prove that it was the intention of the proposer to allow.”
Article 1798, LSA-C.C., provides:
“As there must be two parties at least to every contract, so there must be something proposed by one and. accepted and agreed to by another to form the matter of such contract; the will of both parties must unite on the same point.”
It is manifest, therefore, that not only must an option to buy immovable property “be evidenced by a written instrument” but the unqualified acceptance thereof be evidenced in writing, giving full rcognition to and in accordance with the terms and conditions of the proposal, and formally exercised and tendered to the proposer pri- or to the expiration of the stipulated time.
Recognizing these invoked requirements in our law, plaintiff contends that the resolution of the plaintiff Board, adopted December 11, 1953, together with the verbal notice of December 14, 1953, constituted a timely acceptance of said option sufficient in law to convert it into a binding and en-forcible contract. In other words, it is argued that the resolution of December 11, 1953, of which defendant received verbal notice on December 14, 1953 (within the prescribed time), was an unqualified and an unconditional legal acceptance or exercise of the option.
 We do not construe the resolution of plaintiff Board, adopted December 11, 1953, as constituting an unqualified and unconditional acceptance of the option granted by the defendant, nor can we give it such effect. A reading of this instrument will disclose that it is merely an entry in the minutes of the plaintiff Board made upon a motion by one of its members and seconded by another. Apparently no resolution was presented to the Board, calling for affirmative or negative action, nor is any acr tion certified other than being an excerpt from its minutes. It does not specifically show a definite intention on the part of said plaintiff Board to exercise any option whatever. The minute entry merely *approved the purchase of a farm consisting-of approximately 453 acres of land”, includr ing the movables thereon, for Southern University and requested the Building Authority (Louisiana State Building Authority) to purchase “a farm” of a specified acreage. No description of the property or its location is given; no acceptance of any particular option is made; no specified price to be paid is set forth; nor is there any identity of the farm containing approx *572 imatély 453 acres, but merely the use of the words “a farm”; nor is the name of the owner, or optionor referred to. It is- equally significant that this instrument simply requests the Building Authority to purchase ■this farm; no time limit is therein specified as to when the Building Authority may or may not do- so. Manifestly, this minute entry simply informed the State Building Authority of the desire of plaintiff Board to purchase a 453 acre farm and requested the latter to do so at its pleasure.
It is equally conclusive that this instrument cannot be held to be an unqualified and an unconditional acceptance. Its provisions necessarily foresaw the contingency of further action by another State Authority, namely the Louisiana State Building Authority, whose final approval was legally required before there could be a binding contract. The request made by plaintiff Board upon the Building Authority recognized the right and power of the latter to approve or reject the requested purchase of “a farm”. The fact that the Building Authority enjoyed this prerogative is evidenced by the resolution adopted by it on December 23, 1953, formally appropriating the required purchase price by a vote of four “yeas” and no “nays”. We may rightfully assume that a converse negative vote could have equally resulted, and whi-ch would have left the alleged instrument of acceptance by plaintiff Board an impotent and fruitless gesture. The record unmistakably shows that it was only on December 22, 1953, seven days after the specified time period had expired, that a formal acceptance was made by plaintiff Board, through Dr. Clark by letter addressed to the realtor informing him of its acceptance and that it would exercise its privilege thereunder prior to January 14, 1954.
To give effect to the instrument of December 11, 1953, as plaintiff’s counsel would have us do, would do violence to our codal provisions which demand a promise to sell on one hand and a reciprocal consent to buy on the other between the parties, so as to constitute a meeting of the minds on the thing, the price and terms. These legal requirements are mandatory before either party may exercise the right to specific performance.
Though it appears that on December 14, 1953, Dr. Clark telephoned the realtor and verbally accepted the option, it is well settled that an oral acceptance is insufficient in law, the proof of which must necessarily be by parol evidence, which is inadmissible in such instances. Barchus v. Johnson, supra; Davidson v. Midstates Oil Corporation, supra; ' Article 2462, as amended by Act 27 of 1920, LSA-C.C.
Be that as it may, the record discloses that on December 14, 1953, three days after the alleged acceptance of the option by plaintiff Board through the' minute entry above referred to, and contemporaneously with the verbal acceptance by telephone, the Louisiana State Building Authority, through its secretary, Allison R. Kolb, sty *574 ling itself as vendee, submitted a written purchase agreement addressed to the defendant, offering, on behalf of the State of Louisiana (plaintiff Board), to purchase from the defendant the land in question. Though this document was addressed to_the defendant, it clearly appears that it was delivered to the realtor, Perkins, and thereafter, on December 21, 1953, presented by Farr, an agent of the realtor, to the defendant. This purchase agreement called for an acceptance thereof by the defendant, on or before December 21, 1953. It was submitted in pursuance and in response to the request or resolution of plaintiff Board of December 11, 1953. A check for $1000 was attached thereto, with the understanding that said deposit would apply to the purchase price of said property should said purchase agreement be signed and approved by the defendant, and with the further proviso that should the State not accept title, said deposit would be considered forfeited and be the full measure of damages to which the defendant would be held entitled to recover. It further provided that the defendant would pay all ad valorem taxes for the year 1953, and that there would be no reservation of mineral rights; that the defendant would pay all usual fees, such as internal revenue stamps and tax certificates ; and that the State would have sixty days from the acceptance of this offer by the defendant to execute the act of sale. It further provided that this offer and purchase agreement would remain binding and irrevocable until December 21, 1953.
The record discloses that upon being presented with this purchase agreement the defendant refused to approve or sign it and thereupon proceeded to execute a sixty-day option to purchase in favor of one Hughes, defendant reserving one-half of the mineral rights, and as a result of which the said Hughes has intervened herein.
It is manifest, therefore, that the purchase agreement prepared and presented to the defendant by the Building Authority, in pursuance of the request of plaintiff Board constituted an entirely different and new contract or counter-offer. It is also manifest that this counter-offer supplanted the original option, containing terms and conditions materially foreign to'the latter.
Strangely enough, plaintiff’s contention is that on December 11, 1953, it had, by resolution, accepted defendant’s option, and requested the State Building Authority to purchase the property for it. Within three days thereafter we find the Building Authority, for reasons undisclosed, and in an effort to comply with the request so made of it, submitting to the defendant an entirely new offer, or counter-proposal. Certainly, had there been an unqualified acceptance as of December 11, 1953, we cannot perceive the reasoning prompting the counteroffer, save that the terms of the option were unacceptable with a desire to purchase under more favorable terms. It cannot be questioned that the defendant had the right to reject the counter-offer as was done in this instance. • , ■ •
*576 It is well established in our law that “an option to purchase real estate * * * must be accepted as made and conformable to' the terms specified. An acceptance on a condition not contained in the option amounts to a counter-proposition, not binding until accepted in writing by the other party.” McDonough v. Winchester, 1 La. 188; Bethel v. Hawkins, 21 La.Ann. 620; Connell v. Hill, 30 La.Ann. 251; Elmer v. Hart, 121 La. 537, 46 So. 619; LSA-C.C. Article 1805.
: For the reasons assigned, the former judgment of this Court is reinstated and now made final.
FOURNET, C. J., absent.

. LSA-Civil Code Article 2275.