O’NIELL, Chief Justice.
 

 The plaintiff has appealed from a judgment dismissing his suit on an exception of no cause or right of action. He is suing to annul a sale of a royalty interest in an oil and gas lease. The sale was made by him to J. B. Shirley who is one of the two defendants in this suit, on the 22nd day of September, 1936, for $500 cash. Shirley transferred the title to Charles O. Noble, the other defendant in this suit, two days afterwards, that is, on the 24th day of September, 1936, by a deed in which the price was said to be $50 cash. The plaintiff charges that, in reality, the royalty interest was bought from him by Noble, who interposed Shirley as his representative, to conceal the fact that he, Noble, was the purchaser. Shirley filed an exception of no cause or right of action against him, because of his having made the transfer to Noble before the suit was filed. The plaintiff then filed a supplemental petition, alleging that the transfer from Shirley to Noble was made in furtherance of the alleged conspiracy, and was a part of the alleged fraudulent transaction by which Noble acquired for $500 the royalty interest which, to Noble’s knowledge, was worth $40,000.
 

 The reason why the court ruled that the plaintiff had no cause or right of action against Shirley was that, having disposed of the royalty interest in contest, he was not an indispenable party to the suit.
 

 Our opinion is that, if the plaintiff has disclosed a cause of action against Noble, Shirley is an indispensable party to the suit. It is well settled that in a suit to annul a sale or any other transaction on the ground of fraud all who were parties to the transaction must be made parties to the suit. Hyde v. Craddick, 10 Rob. 387; Fecel, Administratrix, v. Guinault, 32 La.Ann. 91; Stockmeyer & Co. v. Weidner, 32 La.Ann. 106; Heirs of Burney v. Ludeling, 41 La.Ann. 627, 6 So. 248. It is only in cases where the title claimed by the defendant is an absolute nullity on its
 
 *201
 
 face, or where he claims title by virtue of a sale from one who did not own the property, that the plaintiff, suing to recover the property, may sue the claimant alone, and ignore the transaction by virtue of which he claims title — -and ignore all other parties to the transaction. See Long v. Chailan, 187 La. 507, 175 So. 42, and the decisions there cited.
 

 The question, therefore, is whether the plaintiff’s allegations disclose a cause of action against Noble. The plaintiff’s attorneys argue that the petition sets forth two distinct causes of action, namely, first, that the deed was obtained from him by fraud, or by concealment of a fact relating to the value of the property, which concealment, on account of the confidential relation existing between the plaintiff and Noble, constituted fraud, and, second, that when the deed was obtained from him he was, to the knowledge of Noble and his agent, thoroughly intoxicated, and so drunk in fact that he was incapable of exercising his reason or of understanding the transaction, or of knowing what he was doing.
 

 Although, in a sense, the two causes of action alleged are separate and distinct, and independent of each other, they are very closely related if in fact both causes of action are true. It is difficult to consider the alleged concealment of the truth,' without taking into consideration also the alleged drunkenness, — and vice versa.
 

 The plaintiff’s charge of fraud in this case is founded upon article 1847 of the Civil. Code, which defines fraud, and which declares that error is an essential element in the definition, and must be caused or continued by artifice, “by which is meant either an assertion of what is false, or a suppression of what is true,” in relation to a material part of the contract, in order to render it null.
 

 The plaintiff avers that, at the time when Noble, through the interposition of Shirley, bought the royalty interest for $500, Noble and Shirley knew that a producing oil well was about to be brought in on the leased land, and withheld the information from him, Emerson, notwithstanding there was then a business agreement and confidential relation between him and Noble which made it the duty of Noble, morally, equitably, and legally, to avoid taking advantage of any inside information in relation to the value of the royalty interest in question. The plaintiff alleges that in fact the producing oil well was brought in on the fourth day after Noble, through Shirley, bought plaintiff’s royalty interest; and that, at the time of the sale of the royalty interest for $500, it was worth $40,000, to the knowledge of Noble and Shirley. In that connection the plaintiff avers that the royalty interest, of which one-half is the matter in contest in this suit, was bought by him and Noble jointly on the 22d day of November, 1926, with the understanding and agreement that whatever profit might be made on the speculation would be divided equally between them. Plaintiff avers that, in or about the year 1919, he and Noble entered into a verbal agreement to engage in the buying of oil and gas leases and royalties, and lands on which to drill for oil and gas, for their joint account, and to divide
 
 *203
 
 equally whatever profits might be made on such transactions. Plaintiff avers that he and Noble did then in fact engage in such transactions or speculations, jointly, and did buy oil and gas leases and royalties, and lands, for their joint account and mutual benefit, and did divide equally the profits made on such transactions. He avers that, although “said firm” has not been actively engaged in such transactions since the year 1929, the agreement or relation between him, and Noble was never dissolved; and he avers that their buying of the royalty interest of which one-half is in contest in this suit, on November 22, 1926, was one of the' transactions which they had under and pursuant to their understanding and agreement to divide equally the profits that might be made on such transactions. Hence he charges that Noble and Shirley committed a fraud when they, by conspiracy, bought his, Emerson’s, half of the royalty interest owned by him and Noble jointly, for only $500, without giving him, Emerson, the information which they, Noble and Shirley, had, which, as they knew, made Emerson’s half of the royalty interest worth $40,000. ■All of this, of course, may be a mere estimate, or a matter of speculation, on the part of the plaintiff, and, for all that we know, may be grossly exaggerated; but, for the purpose of the exception of no cause of action, we must assume that the allegations of the ’petition are true.
 

 The reason why the judge of the district court held that the plaintiff did not disclose a cause of action against Noble was that the agreement that had existed between the plaintiff and Noble, as described in the plaintiff’s petition, produced only a joint ownership, and not a partnership, nor even a joint adventure. The judge pointed out that, according to article 2836 of the Civil Code, a particular partnership, to own real estate, must be established by a written contract; and hence that the plaintiff’s allegation that the agreement between him and Noble was only a verbal agreement showed that the agreement did not constitute a partnership. We agree with the judge that the verbal contract set forth in the plaintiff’s petition did not constitute a particular partnership. The agreement was to enter into a series of joint adventures, and the buying of the royalty interest, of which one-half is in contest in this suit, was one of the series of such joint adventures as were contemplated by the parties. We agree with the judge of the district court that, ordinarily, joint ownership of a royalty interest in a mineral lease does not create any such confidential relation between or among the joint owners as should oblige them, morally or equitably, to inform one another of the value of such royalty interest, and hence that they may deal with each other at arm’s length, in relation to their royalty interests. But the allegations of the petition in this case show something more in that respect than merely a joint ownership in a royalty interest. The plaintiff has alleged such a confidential relation between himself and Noble, that he should be allowed to prove it by parol evidence, so far as there is no written evidence available. We must bear in mind that, the original joint ownership of the royalty interest, of which one-half is in contest in
 
 *205
 
 this suit, is said to be evidenced by a written deed. Hence, if parol evidence is offered to prove the confidential relation alleged in this case, it will not he to establish the original joint ownership between the plaintiff and the defendant. If such evidence should tend to show that there was a verbal agreement to buy and sell real estate jointly, or as if in partnership, it will be merely an incident and not the purpose of the evidence. The rule which forbids the proving of title to real estate by parol evidence is not applicable to evidence which is offered for some other purpose, for which it is relevant and competent, and which relates only collaterally and unavoidably to, and without establishing or affecting, the. ownership of real estate. Wigmore on Evidence (2d Ed.) Vol. 2, p. 863, § 1252; 22 C.J. p. 978, § 1224; p. 987, §§ 1230, 1231; p. 994, § 1249.
 

 The plaintiff’s allegation that, he was drunk when he sold his royalty .interest, and that for that reason the sale was null, is founded upon article 1789 of the Civil Code, which follows immediately the article referring to insanity, and provides :
 

 “A temporary derangement of intellect, whether arising from disease, accident or other cause, also creates an incapacity pending its duration, provided the situation of the party and his incapacity were apparent.”
 

 This article of the Code is in title 4, Of Conventional Obligations, and in section 1, Of the Parties to a Contract, and of their Capacity to Contract. There is no such article in the Civil Code , of France. Nevertheless, as pointed out in the brief for the appellant, the French jurists and the commentators maintain that a person who is intoxicated to such an extent that he has lost his reason is incapable of giving his consent and hence incapable of entering into a contract while he remains in that condition. The only pertinent articles in the Code Napoleon are article 1108, of which article 1779 of the Louisiana Code is a translation, and which names, as two of the four essentials of a valid contract, (1) parties legally capable of contracting, and (2) their consent legally given, and article 1123 of the Code Napoleon, from which article 1782 of the Louisiana Code was taken, and which declares that all persons are capable of contracting except those whom the law declares incapable. Article 1789 of the Civil Code of Louisiana is so plainly applicable to a person who is so thoroughly intoxicated that he has lost his reason, that it is perhaps unnecessary to refer to the French authorities, dealing with articles 1108 and 1123 of the Code Napoleon. It is said in the brief for the appellant that these authorities, which he quotes, were collected and translated by Dr. Joseph Dainow, Professor of Civil Law in Loyola University Law School. The work seems to have been done so thoroughly that we give the references for the convenience of any one whom they may hereafter concern, viz.: Puffendorf-Droit de la Nature-Book 3, ch. 6, No. 5; d’Argentré-Sur la Coutume de Bretagne, p. 111, cited in Journal du Palais Répertoire Général (1791-1857), Verbo, Ivresse, No. 20; Pothier-Oeuvres
 
 *207
 
 (Bugnet, Paris, 1861), vol. 2, p. 28, Traité des Obligations, No. 49; Toullier, Le Droit Civil Francais, (Bruxelles, 1830), vol. III, p. 355, Des Contrats, No. 112; Duranton, Cours de Droit Francais (3d Ed. Bruxelles, 1834) vol. VI, p. 29, Des contrats, No. 103; Chardon, Traité du Dol et de la Fraud, (Paris, 1838), vol. I, pp. 148-150, No. 88; Margadé, Explication Théorique et Pratique du Code Napoléon, (5 Ed., Paris, 1859), vol IV, p. 341, No. 397, at art. 1108, n. III; Aubry et Rau, Cours de Droit Civil Francais, (5th Ed. Paris, 1902), vol. IV, pp. 477, 478, § 343; Planiol et Ripert, Traité Pratique de Droit Civil Francais, (Paris, 1930), vol. VI, p. 98, No. 76, pp. 226, 227, Nos. 172, 173; Planiol, Traité Elémentaire de Droit Civil (12th Ed. Paris, 1935) vol. I, p. 111, Nos. 271-273; Beudant, Cours de Droit Civil Francais (2d Ed. Paris, 1936), vol. VIII, p. 68, No. 96; Gouin et Houlbert v. Pothier, Angers, 12 Décembre 1823; Sirey. 1824. 2. 140; Ginesty v. Labarthe, Toulouse, 25 Juillet 1863; J. Palais. 1864. 763; Dalloz.
 
 1863. 2.
 
 139; Sirey. 1864. 2. 137; Robin v. Rouxel, Rennes, 6 Juin 1881; J. Palais. 1882. 196; Dalloz. 1881. 2. 248; Sirey. 1882. 2. 23; Ray v. Vannier, Dijon, 29 Juin 1881; J. Palais. 1882. 975; Sirey. 1882. 2. 192; Véchambre v. Thomassin, Dijon, 9 Mars 1881; J. Palais. 1882. 1099; Sirey. 1882. 2. 220; Noyers v. Barbe, Angers, 30 Mars 1843; J. Palais. 1843. vol. 2. 260.
 

 In the early days, the common-law rule was that a man should not be allowed to stultify himself by pleading drunkenness as a cause for annulling' his contract, or in defense of a'suit on the contract. But the rule has been abrogated; and it is now generally recognized that one who is so completely intoxicated that he has lost his reason is as incapable of making a valid contract, as long as he is in that condition, as if he were insane. 6 R.C.L. 595, 596; Hauge v. Bye, 51 N.D. 848, 201 N.W. 159, 36 A.L.R. 619.
 

 It is obvious that the plea of drunkenness, as a ground for annulling a' contract, is one which may be readily abused. Hence the plea should never be sustained without^ convincing proof that the alleged drunkenness was so complete that, at the time of making the contract, the party was bereft of h'is mental faculties. Drunkenness is not a well-defined term. Leland v. Leland, 179 La. 533, 154 So. 443. It is a matter of common knowledge that, by force of habit, or as an accomplishment, some men can attend to their business successfully while very much under the influence of liquor. We are not referred to any case in this state where a contract has been annulled at the instance of one of the parties on the ground that he was drunk when he made the contract; and' we take it that the courts will be reluctant to sustain such a plea except in cases whe're the intoxicated party was imposed
 
 upon or
 
 made a sacrifice by reason of his drunkenness. Our conclusion, however, is that the plaintiff in this case has said enough in his petition to call for an answer on the part of the defendants, and a disclosure of all of the facts.
 

 The appellees have filed in this court a plea of prescription of thirty
 
 *209
 
 days, under rules 4, 5, and 6 of article 1788 of the Civil Code, viz.:
 

 “4. That, except in the case of death hereafter provided for, no suit can be brought, nor any exception [plea] made, to invalidate a contract on account of insanity, unless judgment of interdiction be pronounced before bringing the suit, or at least applied for before making the exception [plea].
 

 “5. That if the party die within thirty days after making the act or contract, the insanity may be shown by evidence, without having applied for the interdiction; but if more than that time elapse, the insanity can not be shown to invalidate the act or contract, unless the interdiction shall have been applied for, except in the-case provided for in the following rule.
 

 “6. That if an instrument or other act of a person deceased shall contain in itself evidence of insanity in the party, then it shall be declared void, although more than thirty days have elapsed between the time of making the act and the death of the party, and although no petition shall have been presented for his interdiction.”
 

 Counsel for the appellees contend that a necessary inference from the rules which we have quoted is that, if a party to a contract survives the making of the contract for a period exceeding thirty days, and no proceeding to interdict him has been instituted within the thirty days, no suit can be brought to annul the contract on the ground of insanity, nor can any such plea be made against a suit on the contract. That is not our understanding of the rules. In the first place, they are rules of evidence, or of procedure, rather than prescription. First it is said that, before a suit can be brought or plea made to invalidate a contract on the ground of insanity, the interdiction of the party alleged to be insane must be applied for. Then comes the proviso that a suit to annul a contract on the ground of insanity,, or a plea of insanity in defense of a suit on the contract, is not barred by a failure or neglect to apply for the interdiction of the person alleged to have been insane if he has died within thirty days after making the contract; and then comes the additional proviso that, even though the party alleged to have been insane at the time of making a contract lived more than thirty days after making the contract,' and died without an application having been made to have him interdicted, the contract shall be declared void if the instrument which purports to evidence the contract contains in itself evidence of the insanity of the party. These rules are not applicable, or appropriate, to a suit to annul a contract on the ground merely that it was made during “a temporary derangement of intellect” — in the words of article 1789 of the Civil Code. There is no law Subjecting a person to interdiction for having been drunk. Act No. 100 of 1890, p. 116, amended by Act No. 191 of 1932 provides, for the interdiction of inebriates, or habitual drunkards; but that would not justify a ruling that a suit cannot be brought to annul a contract on the ground that the plaintiff was drunk, and hence afflicted with “a temporary derangement of intellect,” until a suit is brought to interdict him. Our conclusion is that the ap-
 
 *211
 
 pellees’ plea of prescription of thirty days is not well founded.
 

 The plea of prescription of thirty days is overruled; the judgment appealed from is reversed; the exceptions of no cause or right of action are overruled as to both defendants; and the case is ordered remanded to the district court for further proceedings consistent with the opinion which we have rendered. The costs incurred in connection with the exceptions of no cause or right of action, including the costs of this appeal, are to he borne by the defendants; all other costs are to abide the final disposition of the case.