ROGERS, Justice.
 

 Gussie B. Dejean and Harry C. Shultz, mineral lease brokers, sued Neal S. Whisenhunt, a retired business man, for two-thirds of $8000 alleged to be the profits made on a certain oil and mineral lease obtained by Whisenhunt from the Iowa-Jennings Oil Company and- assigned by him to the Superior Oil Company. Defendant filed an exception of no right or cause of action which was overruled. Under reservation of his exception, defendant filed a general denial and later an amended answer amplifying the original answer. After a trial on the merits the Court rendered judgment in favor of plaintiffs for the sum of $2271.66 each, with interest and costs, and from this judgment defendant has appealed.
 

 Defendant first argues that the trial judge erred in overruling his exception of no right or cause of action. The exception is based on the proposition that parol evidence is inadmissible for the purpose of establishing title to real estate.
 

 This case is governed by the rule of law in effect prior - to the adoption of Act 205 of 1938 classifying mineral leases as real rights and incorporeal immovable property. Under the established jurisprudence prior to the adoption of this statute, a lease to drill and explore for oil or gas conferred no real right. It had the status of a personal right. Gulf Refining Company v. Glassell, 186 La. 190, 171 So. 846.
 

 In the case of Emerson v. Shirley, 188 La. 196, 175 So. 909, the question of the admissibility of parol evidence to establish a joint adventure in the acquisition' of oil, gas and mineral leases and oil, gas and mineral royalties was involved. It was urged by defendant in that case that if plaintiffs relied upon parol evidence to establish the alleged joint adventure, he did not allege a cause of action because a joint adventure must be proved by written evidence. This Court overruled the exception, holding that [page 912], “the rule which forbids proving the title to real estate by panol evidence is not applicable to evidence which is offered for .some other purpose, for which it is relevant and competent, and which relates only collaterally and unavoidably to, and without establishing or affecting, the ownership of real estate.”
 

 Inasmuch as from the allegations of the petition it clearly appears that it is not the title to the real estate which is involved but merely a lease on the real estate, we .find no error in the action of the trial judge in overruling the exception of no right or cause of action.
 

 On the merits the case presents only questions of fact, which the trial judge has resolved against the defendant. We quote in full his written reasons for judgment, which are filed in the record, as follows:
 

 
 *611
 
 “In this case plaintiffs have filed suit against the defendant, alleging that on or about the 1st day of October, 1936, they entered into a joint adventure for the purpose of purchasing an oil, gas and mineral lease on a certain tract of land located in Acadia Parish, Louisiana, and belonging to the Iowa-Jennings Oil Co.
 

 “That pursuant to the agreement the defendant, one of the joint adventurers, secured the lease on the property described in plaintiffs’ petition and negotiated a sale for the same, and did sell the same for the sum of $8,000.00. That after having obtained the lease the defendant failed and refused to recognize the plaintiffs as having a joint interest with him in the lease, and that he has failed and still fails and refuses to pay to them their share of the profit made from the sale and assignment of the lease.
 

 “The defense in the case is that there was no agreement between parties to enter into a joint adventure and secure the lease, but that the defendant upon his own initiative secured the lease for himself, and that he alone is entitled to any profit made from the sale of the same.
 

 “This is a case that must be decided on questions of fact alone. The defendant has cited Article 2277 of the Civil Code and many cases thereunder, which Article provides that all contracts for the payment of money where the value exceeds $500.00 must be proven by at least one. credible witness and other corroborating circumstances.
 

 “It is true in this case that the amount involved is for a sum in excess of $500.00, and that the agreement concerning the same, if • there was an agreement, was a verbal agreement between the parties.
 

 “As we have stated before, this is entirely a question of fact. On one hand we have the testimony of the two plaintiffs. This testimony is to the effect that they sought out the defendant and with the intention of employing him tc secure the lease for them; that instead of securing the lease for them he asked to be made a partner or to enter into the joint adventure with them; and that they reluctantly consented that he do so.
 

 “This testimony is absolutely denied by the defendant. The defendant maintains that the day after he wired to the owners of the property for the purpose of securing a lease he informed one of the plaintiffs of the fact that he was trying to get a lease, and that he might secure the plaintiff’s assistance in disposing of the same at a profit, in which event if he did so he testified that he agreed to give plaintiffs half of the net profit.
 

 “Up to this point the only direct evidence in the case is the testimony of the interested parties. Therefore it is necessary for the Court to interpret the circumstances surrounding the case for corroboration. In our opinion the circumstances of this case sufficiently corroborate the plaintiffs so that there can remain no doubt as to the true facts. First, there are two of the plaintiffs, whose testimony must be considered of equal force as that of the defendant. Secondly, the defendant’s explanation that he approached one of the plaintiffs for the purpose of securing the plaintiff’s assistance to negotiate a sale of the lease before he had
 
 *613
 
 obtained the lease does not seem either reasonable or logical to this Court. Next, immediately, according to his own admission, upon his receiving information that he had obtained the lease, the defendant sought to contact both the plaintiffs, while according to his own testimony he had never talked with any one except Dejean, and it was only after he had negotiated a sale of the lease that he refused to recognize the plaintiffs or either of them as joint owners of the lease with him.
 

 “The circumstances that the telegram sent by the defendant was sent upon the exact day which plaintiffs claim they approached the defendant and requested him to wire, is a circumstance which in the opinion of this Court corroborates the plaintiffs, and lastly, at a time not suspicious the plaintiffs discussed this case with one Whit-low, and at that time maintained that they were entitled to their proportionate share of the net profit.
 

 “For the above and foregoing reasons in the opinion of this Court the plaintiffs have established their case with that degree of certainty requisite by the testimony of two witnesses and corroborative circumstances which successfully meet the requisites of Article 2277 of the Civil Code.”
 

 It may be observed that Whitlow was a witness for the defendant and that defendant had called him up and talked to him about the matter before his several conversations with the plaintiffs. At the time these discussions took place with Whitlow, there had been no sale of the lease and consequently, no profit had been derived therefrom. Later Whisenhunt paid Whit-low a substantial commission for his assistance in making the deal with the Superior Oil Company.
 

 Another corroborating circumstance, which is not mentioned in the reasons of the trial judge, appears in defendant’s own testimony at page 78 of the transcript reading as follows:
 

 “Q. Dejean did not call to see you at your office on October the 1st? A. I am positive.
 

 “Q. You had no conversation with either of those before you sent that telegram on October 1st? A. No, sir.
 

 “Q. How did it happen that on October 2, you spoke to Mr. Dejean about this matter? A. Well, I was down on the street and I had not yet received a reply from the telegram, and I happened to see Mr. Dejean and knowing that he was connected with oil, leasing and royalty, one thing another, thought he might tell me if that had been leased.
 

 “Q. You were just inquiring for information? A. Yes.
 

 “Q. Mr. Whisenhunt, had you made any efforts in Crowley to find out if it had been leased, or not? A. No, sir.”
 

 According to defendant’s own admission, he did not know whether the property in question had been leased and he had made no effort to ascertain that fact. It does not seem reasonable or logical that the defendant should have suddenly determined, on October 1, 1936, to obtain a lease on property about which he had no information, and as to which he had made no attempt to obtain any information. On the contrary, it would seem to be more reason
 
 *615
 
 able and logical that defendant’s act in sending the telegram to the Iowa-Jennings Oi[ Company was prompted by some agency other than his sudden whim to do so. Plaintiffs’ explanation of the circumstances resulting in the sending of the telegram is, we think, more reasonable and logical. It is, that plaintiffs, who ar-e engaged in the business of obtaining and selling oil leases, being convinced that ten acres of land belonging to the Iowa-Jennings Oil Company (a non-resident corporation), located in the Evangeline field of Acadia Parish, were probably over the producing area in the then rapidly developing flank production on the southwest of the salt dome from which cap-rock production had been obtained for thirty-five years, and learning that defendant, who had been for many years connected with the Jennings-Heywood Oil Syndicate, an active operator in that field, was acquainted with the officers, or at least, some of the officers of the Iowa-Jennings Oil Company, called at defendant’s office for the purpose of employing him to procure for them a lease upon the property, and informed him that they were willing to pay as much as $1500 for the lease. Defendant stated that he did not consider the lease worth that much money, and he thought that he could obtain it for less money. Defendant suggested that instead of procuring the lease for plaintiffs he procure it for all of them, each to have a one-third interest therein, to which suggestion plaintiffs finally agreed and at that time offered to give defendant $1500, which they authorized defendant to pay for the lease if necessary. Defendant, however, told plaintiffs that it was not necessary to make the deposit as he did not know what the lease would cost and for plaintiffs to wait and see what the cost would be. Defendant stated that he would write a letter to the officials of the Iowa-Jennings Oil Company, but plaintiffs insisted that instead of writing a letter he wire the officials of the oil company immediately to ascertain if the land was leased and if not, on what terms he could procure the lease. Defendant accepted plaintiffs’ suggestion to send the wire, which he did that afternoon.
 

 The trial judge found that the net profit derived from the transaction by the defendant was $6815, and he accordingly rendered judgment condemning defendant to pay the sum of $2271.66, one-third of that amount, to each of the plaintiffs.
 

 From our reading of the record,' we find no warrant for disturbing the judgment of-the district court.
 

 For the reasons assigned, the judgment herein appealed from is affirmed.
 

 O’NIELL, C. J., does not take part.