HOOD, Judge.
Plaintiffs, Jack A. Hayes and Milton H. Knox, instituted this suit against Fritz J. Muller primarily for a money judgment for two-thirds of the amount which defendant is alleged to have received from the sale or assignment of a certain oil, gas and mineral lease. In the alternative, plaintiffs demand that defendant be ordered to make an accounting of all rentals, royalties and profits earned pursuant to a contract of joint adventure which is alleged to have been entered into by plaintiffs and defendant, and that defendant be ordered to pay unto each of the plaintiffs one-third of all of the profits shown by said accounting.
The district court rendered judgment maintaining exceptions of no right and no cause of action filed by defendant, and dismissing the suit. Plaintiffs have appealed from that judgment.
For the purpose of determining the correctness of the judgment of the trial court, all well-pleaded facts alleged in plaintiffs’ petition must be accepted as true. A suit will not be dismissed on exceptions of no right or no cause of action where the allegations of fact contained in the petition adequately set forth a right and cause of action as to any part of plaintiff’s demands. See Bailey v. Texas Pacific Coal and Oil Company, La.App. 3 Cir., 134 So.2d 339, and authorities therein cited.
Plaintiffs allege, in substance, that in October, 1953, an agreement or a contract of joint adventure was entered into between plaintiffs and defendant to the effect that they would each contribute $20,000.00, making a total of $60,000.00, which would be used for the purchase of royalties and leases in the North Rayne and/or Castille areas, in Acadia Parish. Pursuant to this agreement, some royalty interests in that area were purchased in the name of Muller on October 14, 1953, and on the same day other royalty interests were purchased in the name of Hayes; and on October 16, 1953, additional royalty interests on lands in the same area were purchased in the name of Muller. The total sum.of $46,013.-80 was paid for all of these royalties, and after the purchases were completed 'the costs were pro-rated among plaintiffs and defendant, and the interests in such royalties were divided by assignments equally among the three parties.
It is alleged that on October 16, 1953, also pursuant to this joint adventure, Muller obtained from Etta Stamm Sweeney, and others, an oil, gas and mineral lease affecting property in Acadia Parish, which lease is referred to herein as the “Sweeney lease,” *178 and that this lease was obtained by Muller, in his name, at a cost substantially less than the amount paid for the royalty interests hereinabove mentioned. Plaintiffs, upon being informed of the purchase of the Sweeney lease, inquired of the defendant why he had not advised them of the purchase, and why he had not asked for payment from plaintiffs of their portions of the cost, that defendant thereupon advised plaintiffs that this matter would be discussed at a later date, and that petitioners did not question defendant about this lease again for several months. During the early part of the year 1959, plaintiff Knox again inquired of defendant about this lease, and he was again advised by Muller that the matter would be discussed at a later date. On December 10, 1959, defendant Muller sold, transferred, conveyed and set over unto Louisiana Gas Corporation “all of the interest he and petitioners possessed in the hereinabove described 'Sweeney lease’ which was in defendant’s name as lessor,” for a consideration of $900,000.00.
The petition alleges that subsequent to the aforementioned conveyance petitioners made demand on defendant for their respective one-third interests in, the “proceeds derived by said defendant from the sale of said lease,” that defendant refused to pay to petitioners their just interests in the proceeds so derived, and that defendant has further refused to make an accounting to plaintiffs of the proceeds derived by him from the joint adventure entered into in October, 1953. Plaintiffs further allege that they and defendant specifically contracted and agreed at the time they entered into said joint adventure that the costs thereof, and the proceeds therefrom, would be equally divided among the three parties, and that defendant has breached his agreement or contract with plaintiffs in that he has failed to account to them for the proceeds derived from said joint enterprise.
Plaintiffs demand that there be judgment in their favor and against defendant, “ordering defendant to specifically perform on their contract of joint adventure and to pay unto each the full sum of Three Hundred Thousand ($300,000.00) Dollars, or in the alternative that defendant be ordered to make an accounting of all rentals, royalties and profits earned by the aforementioned joint adventure and specifically including profits derived from the sale of the ‘Sweeney lease’ and that he be further ordered to pay unto each of petitioners one-third ((4) of all of the said profits shown by said accounting.” Plaintiffs further pray for general and equitable relief.
It is apparent from the allegations contained in plaintiffs’ petition that the contract of joint adventure entered into by the parties in October, 1953, was an oral contract. It also appears from the petition that the “Sweeney lease” was originally acquired by defendant Muller, solely in his own name as lessee, and that plaintiffs did not at any time obtain a written assignment of an interest in said lease or any other writing tending to show that they owned an interest in it.
The trial court, in maintaining the exceptions of no right and no cause of action filed by defendant, held that plaintiffs must first establish that they owned an interest in the Sweeney lease before they would be entitled to recover a share of the proceeds from the sale of that lease, and that parol evidence is not admissible to establish the ownership of an interest in such a lease or to prove the existence of an oral contract of joint adventure when a part of its assets consists of real property. The court further held that since plaintiffs do not allege that they acquired an interest in said lease, in writing, or that the contract of joint adventure was in writing, their petition fails to state a cause of action. The decision of the trial court was based largely upon the provisions of LSA-R.S. 9:1105 (as amended in 1950) and upon Articles 2275, 2440 and 2836 of the LSA-Civil Code.
LSA-R.S. 9:1105, as amended by Act 6 of the 2nd Ex. Sess. of 1950, provides that:
“Oil, gas, and other mineral leases, and contracts applying to and affecting these leases or the right to reduce oil, *179 gas, or other minerals to possession, together with the rights, privileges, and obligations resulting therefrom, are classified as real rights and incorporeal immovable property. They may be asserted, protected, and defended in the same manner as may be the ownership or possession of other immovable property by the holder of these rights, without the concurrence, joinder, or consent of the landowner, and without impairment of rights of warranty, in any action or by any procedure available to the owner of immovable property or land. This Section shall be considered as substantive as well as procedural so that the owners of oil, gas and other mineral leases and contracts within the purpose of this Section shall have the benefit of all laws relating to the owners of real rights in immovable property or real estate. As amended Acts 1950, 2nd Ex Sess., No. 6, § 1.” (Emphasis added.)
Some of the “benefits” accorded by law to the owners of real rights in immovable property, which benefits have now been extended to the owners of oil, gas and mineral leases, are those provided in Articles 2275 and 2440 of the LSA-Civil Code. These articles state:
“Art. 2275. Every transfer of immovable property must be in writing; but if a verbal sale, or other disposition of such property, be made, it shall be good against the vendor, as well as against the vendee, who confesses it when interrogated on oath, provided actual delivery has been made of the immovable property thus sold.”
“Art. 2440. All sales of immovable property shall be made by authentic act or under private signature.
“Except as provided in article 2275, every verbal sale of immovables shall be null, as well for third persons as for the contracting parties themselves, and the testimonial proof of it shall not be admitted.”
Although the jurisprudence of this State has fluctuated in construing a mineral lease as being in essence a real right or a personal right, it has been consistent to the effect that the transfer of an interest in a mineral lease cannot be made the subject of a verbal agreement and cannot be proved by parol evidence. Noble v. Plouf, 154 La. 429, 97 So. 599; Arkansas Louisiana Gas Company v. R. O. Roy and Company, 196 La. 121, 198 So. 768; Davidson v. Midstates Oil Corp., 211 La. 882, 31 So.2d 7; Wier v. Glassell, 216 La. 828, 44 So.2d 882; Acadian Petroleum Corporation of Louisiana v. Tennant, 222 La. 653, 63 So.2d 343; Serio v. Chadwick, La.App., 2 Cir., 66 So.2d 9; Reagan v. Murphy, 235 La. 529, 105 So.2d 210; Tinsley v. Seismic Explorations, Inc., 239 La. 23, 117 So.2d 897. It is conceivable, therefore, that in cases where it is essential that plaintiff establish ownership of or title to a mineral lease, the petition might fail to state a cause of action if it contains no allegation to the effect that the transfer was in writing. As will be pointed out later, however, one of the issues presented here is whether plaintiffs in this case must establish ownership of or title to the mineral lease before they are entitled to any part of the relief which they seek.
The oral agreement alleged to have been entered into between plaintiffs and defendant in October, 1953, appears to us to be a typical contract of “joint adventure,” as that type of contract is defined in McCann v. Todd, 203 La. 631, 14 So.2d 469:
“‘“A joint adventure has been aptly defined as a special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation.” 33 C.J. p. 841. A joint adventure has also been defined as “An association of two or more persons to carry out a single business enterprise for profit.” * * * The relations between joint adventurers are assimilated to those of partners inter se. Ludeau v. Avoyelles Cotton *180 Co., (164 La. 275, 113 So. 846) supra. As respects the character of the business undertaken, the principal difference between a partnership and a joint adventure “is that, while a co-partnership is ordinarily formed for the transaction of a general business of a particular kind, a joint adventure is usually, but not necessarily, limited to a single transaction, although the business of conducting it to a successful termination may continue for a number of years.” ’ ”
In Louisiana a “joint adventure” is treated as a “partnership,” these designations being used interchangeably, and the relation of joint adventurers is governed by the principles which constitute and control the law of partnership. McCann v. Todd, supra; Young v. Reed, La.App., 2 Cir., 192 So. 780; and Fossier v. American Printing Co., Ltd., La.App., 4 Cir., 130 So.2d 529.
Article 2836 of the LSA-Civil Code, relating to particular partnerships, provides that:
“If any part of the stock of this partnership consist of real estate, it must be in writing, and made according to the rules prescribed for the conveyance of real estate, and recorded as is hereafter prescribed with respect to partnership in commendam.”
In Lagarde v. Dabon, 155 La. 25, 98 So. 744, the Supreme Court recognized that Article 2836 of the LSA-Civil Code was interrelated with other articles of the code dealing with the requirement of writing and recording of transactions affecting real estate. Since the jurisprudence has been established to the effect that Articles 2275 and 2440 apply to oil, gas and mineral leases, it seems to follow that under the provisions of Article 2836 a partnership agreement is required to be in writing if a part of the stock of that partnership consists of a mineral lease.
Defendant contends that in view of the provisions of LSA-C.C. Article 2836 the contract of joint adventure alleged to have been entered into between plaintiffs and defendant must be in writing in order to be valid, because a part of the stock of that joint adventure consisted of real estate (the Sweeney lease), and that since plaintiffs do not allege that the joint adventure was in writing, the petition fails to state a cause of action.
Plaintiffs contend, however, that they do not claim to be owners of an interest in the Sweeney lease, and that they do not attack the validity of the title of Louisiana Gas Corporation in and to that lease. On the contrary, they concede that the assignment of the lease by Muller to Louisiana Gas Corporation in 1959 is valid, and that the full title to such lease is vested in that corporation. They point out that they are merely claiming a portion of the proceeds from the sale of such lease or an accounting of the profits derived from the joint adventure alleged to have been entered into by the parties in 1953. It is argued that an agreement to engage in the purchase and sale of property, including real estate, and to “share profits and losses” resulting from such an undertaking, is a personal agreement which need not be in writing, and that the trial court erred in holding that plaintiffs would not be permitted to introduce parol evidence to establish the contract of joint adventure alleged in the petition and to obtain an accounting of the profits derived from that joint enterprise.
One of the questions presented here, we think, is whether in view of the provisions of LSA-C.C. Article 2836 an agreement to form a joint adventure (or partnership) for the purpose of engaging in the purchase and sale of mineral leases, and to share in the profits or losses from that joint enterprise, may be established by parol evidence. If such an oral agreement can be proved by parol evidence, it necessarily follows that one of the parties to such an agreement may demand and obtain an accounting of the profits from the others. Assuming that an oral agreement to form *181 such a joint adventure can be proved, another related question presented is whether the partnership so formed becomes vested with an equitable interest in a mineral lease purportedly acquired by or for the partnership, so that the partners may share proportionately in the proceeds derived from the sale of such a lease. Since the owners of mineral leases have the benefit of laws relating to immovables, we think for the purposes of determining these issues the Sweeney lease must be treated in the same manner as it would be treated if it were a deed to a tract of land.
Issues similar to those presented here were considered by the Court of Appeal, First Circuit, in the recent case of Darden v. Cox, 137 So.2d 898. In that case plaintiff and defendant entered into an oral .agreement forming a partnership to engage in the general contracting business. Four lots of ground were purchased in the name of one of the partners, Cox. These lots were paid for with partnership funds, they were carried on the books as partnership assets, and they were used in the conduct of the partnership business. Upon the dissolution of the partnership the issue was presented of whether these lots belonged •to the partnership and thus were subject to partition upon liquidation of the partners’ affairs. The trial court held that although legal title to this real property was vested in one of the partners, equitable title thereto was vested in the partnership, and that these lots must be partitioned and divided between the partners along with the remaining assets. The Court of Appeal affirmed the judgment of the trial court, and in doing so it quoted with approval the following language from Vol. 68 C.J.S. Verbo Partnership § 72c(2), p. S07, and § 72d, p. 508, as follows:
“ ‘Where title to real property acquired by or for a partnership is taken in the name of one or more of the partners, it is to be regarded as partnership property or held in trust for the partnership, although the grantee or grantees take the legal title. * * *
“ ‘Ordinarily, real estate bought with partnership funds, for partnership purposes and appropriated to partnership uses, or entered and carried in the accounts of the firm as partnership assets, is regarded in equity as partnership property, irrespective of the name in which legal title is taken, and even though it is conveyed by such a deed as in other cases would make the interests of the grantees those of tenants in common, at least in the absence of an express agreement, or of circumstances showing an intent that such real estate should be held for the separate use of the partners. This is true whether title is taken in the name of one partner with or without the consent of the others. * * ”
After this reference to Corpus Juris Se-cundum, and a quotation substantially to the same effect from 40 Am.Jur., Verbo Partnership, § 101, the Court further said:
“From the foregoing it will be readily noted that at common law although legal title to property acquired by a partner in his own name but paid for with partnership funds and dedicated to partnership use, rests in the partner individually, equitable title thereto is vested in the partnership whose ownership thereof will be completely recognized irrespective of the status of the legal title. When initially confronted with the precise issue involved in the case at bar, the courts of this state adopted the foregoing common-law rule.”
The following cases were then cited as authority for the conclusion that the courts of this state have adopted the above stated common law rule: Baca v. Ramos, 10 La. 417; May v. New Orleans & C. R. Co., 44 La.Ann. 444, 10 So. 769; Calder et al. v. Their Creditors, 47 La.Ann. 346, 16 So. 852; and Shulsinger v. Maloney, 114 La. 846, 38 So. 581. The Court in the Darden case then continued:
“The hereinabove cited jurisprudence establishes the rule in this state *182 to be to tlie effect that, whereas legal title to property, purchased individually in the name of a partner with partnership funds, used in the conduct of the partnership business and carried on the books of the partnership as a firm asset, remains in the partners jointly as owners in common, nevertheless, as between the partners, equitable title thereto is vested in the partnership itself. The correlative of this rule is that property thusly held is considered a partnership asset which, upon dissolution of the partnership, is subject to partition and division along with the remaining assets of the firm in proportion to their respective pro rata interests.”
* * * * * *
“As previously shown, insofar as the partners are concerned equitable title to property held in the manner shown herein is vested in the partnership to the extent it must be partitioned and divided along with the remaining’ assets. * *
We are not willing to say at this time that we agree with the conclusion reached by our brothers of the First Circuit in Dar-den v. Cox, supra, that plaintiff in that suit was entitled to judgment ordering the real property there involved to be sold to effect a partition. We do agree, however, that although the legal title to that property was vested solely in Cox, the equitable title to it, as between the partners, was vested in the partnership, that upon dissolution of that partnership one partner was entitled to an accounting from the other, and that in such an accounting the cost, the value or the proceeds derived from the sale of those lots must be considered and must be included in the accounting. The question is not before us as to the exact type of relief to which plaintiffs would be entitled in this case if legal title to the Sweeney lease should still be vested in defendant. Under the facts presented here, however, we are convinced that although legal title to the lease was vested solely in Muller prior to the 1959 assignment, and thereafter full title was vested in his assignee, Louisiana Gas Corporation, nevertheless as between the partners equitable title to such lease was vested in the partnership prior to the 1959 assignment, and, under the allegations of fact contained in plaintiffs’ petition, the proceeds derived from the sale of that lease are subject to partition as assets of the partnership.
We are aware of the fact that in Darden v. Cox, the real property involved there was purchased with partnership funds, it was dedicated to partnership use, and was carried on the books of the partnership as a. part of its assets, whereas there are no specific allegations in the petition filed in the' instant suit that those circumstances existed here. Plaintiffs allege, however, that they obligated themselves to pay their proportionate part of the costs of obtaining; the Sweeney lease, and it seems to' us that such an agreement, if established by the-evidence, would have the effect of vesting equitable title to the lease in the partnership, as between the partners, to the same extent as though plaintiffs had actually advanced to defendant their proportionate share of the cost of such lease before-it was acquired. Also, we do not think, it is essential for the purpose of establishing an equitable interest in the Sweeney lease for plaintiffs to allege that it was carried on the books as an asset of the partnership or that the lease was dedicated'-, to partnership use, because in our opinion-these are merely circumstances to be considered in determining whether the property was actually acquired for the partnership. We think the allegations contained' in the petition would permit plaintiffs to-introduce evidence, including parol testimony, to establish that the Sweeney lease-was purchased pursuant to the alleged contract of joint adventure. If that is established, then it follows that, as between the partners, the partnership acquired an» equitable interest in or title to the lease, although the legal title to it was vested in: *183 Muller, and that they are entitled to share in the proceeds of the sale of such lease.
Although the issues presented in Emerson v. Shirley, 188 La. 196, 175 So. 909, are not identical to those presented here, the court held that parol evidence was admissible in that case to establish a verbal agreement to enter into a series of joint adventures for the purchase of royalty interests. In that connection the Supreme Court said:
“ * * * We agree with the judge that the verbal contract set forth in the plaintiff’s petition did not constitute a particular partnership. The agreement was to enter into a series of joint adventures, and the buying of the royalty interest, of which one-half is in contest in this suit, was one of the series of such joint adventures as were contemplated by the parties. * * * The plaintiff has alleged such a confidential relation between himself and Noble, that he should be allowed to prove it by parol evidence, so far as there is no written evidence available. We must bear in mind that the original joint ownership of the royalty interest, of which one-half is in contest in this suit, is said to be evidenced by a written deed. Hence, if parol evidence is offered to prove the confidential relation alleged in this case, it will not be to establish the original joint ownership between the plaintiff and the defendant. If such evidence should tend to show that there was a verbal agreement to buy and sell real estate jointly, or as if in partnership, it will be merely an incident and not the purpose of the evidence. The rule which forbids the proving of title to real estate by parol evidence is not applicable to evidence which is offered for some other purpose, for which it is relevant and competent, and which relates only collaterally and unavoidably tOj and without establishing or affecting, the ozvnership of real estate. Wigmore on Evidence (2d Ed.) Vol. 2, p. 863, § 1252; 22 C.J. p. 978, § 1224; p. 987, §§ 1230, 1231; p. 994, § 1249.” (Emphasis added.)
The rule of evidence, stated in the last portion of the above quoted excerpt from Emerson v. Shirley, has been employed by the appellate courts of this state under varying fact situations, where the issue of title was essential but collateral to the party’s main demand. Pickens v. Harris, 160 La. 628, 107 So. 470; Jones v. Jones, La.App. 2 Cir., 126 So.2d 437; La Nasa v. Wiener, La.App. 4 Cir., 127 So.2d 74; Louisiana Ry. & Navigation Company v. Morere, 116 La. 997, 41 So. 236.
Defendant contends, however, that the principle applied in Emerson v. Shirley is not applicable here because in that case the party seeking to introduce parol evidence had once been the record owner of the royalty interest which he sought to have restored to him, whereas the plaintiffs here are seeking to prove by parol evidence their title to an interest in the Sweeney lease, to which interest they have never had record title. It is argued that the Emerson case does not support plaintiffs’ position here, but that it serves only as additional authority for the well established rule that parol evidence is admissible to prove that a party was divested of record title to real estate by fraudulent means. See Ceromi v. Harris, 187 La. 701, 175 So. 462, and Scurto v. Le Blanc, 191 La. 136, 184 So. 567.
We cannot agree with counsel for defendant that the principle applied in Emerson v. Shirley is limited to cases where the claimant had once been the record owner of the real property and had been fraudulently divested of it, especially in view of the case of De Jean v. Whisenhunt, 191 La. 608, 186 So. 43. The facts in that case are almost identical with those alleged in plaintiffs’ petition here, and the Supreme Court held that the principle applied in Emerson v. Shirley was applicable. In the De Jean case, as in this one, two joint adventurers sued a third one, Whisenhunt, for two- *184 thirds of the profits received by him from the purchase and sale of a certain mineral lease which had been obtained by Whisen-hunt, in his name and with his own funds, and later sold and assigned by him to Superior Oil Company. The lease had been acquired by Whisenhunt, however, pursuant to a contract of joint adventure entered into by all three parties, under the terms of which the two plaintiffs were to provide the funds and defendant was to procure the lease. Plaintiffs had no written proof of title and the contract of joint adventure was entered into verbally, as in the instant suit. The trial court permitted plaintiffs to introduce parol evidence to prove the joint adventure and to establish plaintiffs’ equitable interest in the profits derived from that transaction, and on that proof judgment was rendered in favor of plaintiffs. The ¿Supreme Court, in affirming the trial court, said:
“In the case of Emerson v. Shirley, 188 La. 196, 175 So. 909, the question of the admissibility of parol evidence to establish a joint adventure in the acquisition of oil, gas and mineral leases and oil, gas and mineral royalties was involved. It was urged by defendant in that case that if plaintiffs relied upon parol evidence to establish the alleged joint adventure, he did not allege a cause of action because a joint adventure must be proved by written evidence. This Court overruled the exception, holding that (175 So. page 912), ‘the rule which forbids proving the title to real estate by parol evidence is not applicable to evidence which is offered for some other purpose, for which it is relevant and competent, and which relates only collaterally and unavoidably to, and without establishing or affecting, the ownership of real estate.’
“Inasmuch as from the allegations of the petition it clearly appears that it is not the title to the real estate which is involved but merely a lease on the real estate, we find no error in the action of the trial judge in overruling the exception of no right or cause of action.”
It is true that in De Jean v. Whisenhunt the court stated that the case was governed by the law which was in effect prior to the adoption of Act 205 of 1938, later designated as LSA-R.S. 9:1105, the law prior to the adoption of that act being to the effect that a mineral lease conferred no real right but had the status of a personal right. See Gulf Refining Company of Louisiana v. Glassell, 186 La. 190, 171 So. 846. The Court there used language which might be construed as intimating that parol evidence; would not have been admissible if the transaction had occurred after the enactment of the 1938 statute. We do not think the Court intended any such implication, because it specifically applied the principle of the Emerson v. Shirley case, and under that principle parol evidence would have been admissible to prove the verbal contract of joint adventure, regardless of whether that contract was entered into before or after the enactment of the 1938 statute.
Counsel for defendant argues that admitting proof of the verbal contract of joint adventure in this case, and the recognition of an equitable title in the partnership as between the partners, would adversely affect the stability of titles provided for in Articles 2275 and 2440 of the LSA Civil Code, and in the landmark case of McDuffie v. Walker, 125 La. 152, 51 So. 100. We do not agree with counsel in that argument. The title to the Sweeney lease cannot be affected in any way by the conclusion reached in this case. The right of third persons dealing with real estate to rely on the public records is not impaired, and the requirement that transfers of immovable property must be in writing is not affected.
To hold that proof may not be presented to establish the existence of a partnership agreement which is not in writing, where a part of the assets consists of real estate, would prevent an accounting or partition of partnership assets in cases where the great *185 majority of the assets are movable property and only a small part of those assets is alleged to consist of real estate. If the theorjr advocated by defendant in this case were accepted as the law, it would mean that if the partnership, created by verbal agreement, once purports to acquire real estate, and then disposes of it, the parties thereafter would be forever barred from establishing that a partnership ever existed, and thus they could never effect a partition of the remaining movable assets belonging to the partnership. It might enable one partner, by purchasing a small tract of land in the name of the partnership, to effectively prevent the other partners from ever obtaining an accounting or partition of any of the partnership assets. In our opinion Article 2836 of the LSA-Civil Code was not intended to be given that interpretation.
The courts have consistently recognized and enforced verbal contracts between landowners and real estate brokers, and pursuant to those contracts landowners have been compelled to pay commissions to brokers for procuring purchasers for the property. Whatley v. McMillan, 152 La. 978, 94 So. 905; Veters v. Krushevski, La.App.Orl., 100 So.2d 93 (Cert. denied); La Nasa v. Wiener, La.App. 4 Cir., 127 So.2d 74. The legal theory upon which parol evidence is admitted and recovery is allowed in these cases is that the contract between the owner and the broker is a personal contract, under the terms of which the broker is to be compensated for services rendered, and that title to the property is not affected.
In Jones v. Jones, supra, defendant purchased certain mineral rights and resold them to plaintiffs for a higher price. Plaintiffs instituted suit against defendant to recover the difference between the amount which they paid and the cost to defendant, basing their claim on an oral agreement entered into between the parties to the effect that defendant was to acquire the mineral interests in his own name and was then to resell them to plaintiffs for the same price. For these services plaintiffs obligated themselves to pay defendant a commission. The Court of Appeal, in decreeing that plaintiffs were entitled to recover, held that parol evidence was admissible to prove the agreement between plaintiffs and defendant. In so holding, the Court said:
“The title to real estate is not affected by the issues presented in the instant case. Herein we are concerned only as to whether an improper commission or profit was charged for the services rendered by defendant acting as agent for plaintiffs in the purchase of certain mineral acres.”
In Pickens v. Harris, supra, the petition alleged that plaintiff granted a mineral lease on his lands to defendant Harris for a consideration of $3,400.00. Harris thereafter assigned the lease to a third person for $6,800.00. Plaintiff then sued Harris for $3,218.00, being all of the profits derived by Harris from these transactions, less a commission, alleging that pursuant to a verbal agreement between plaintiff and Harris, the latter acquired and assigned the lease as agent for plaintiff, and that plaintiff accordingly was entitled to the profits which Harris derived from these transactions, less the agreed commission. The Supreme Court, in reversing the judgment of the trial court, held that the petition setting out those facts stated a cause of action, and that parol evidence was admissible to prove the verbal agreement between the parties. The Court said:
“The plaintiff is not attacking either the original lease or the assignment to Pratt. ' The binding effect of both the lease and assignment is recognized in the petition, in so far as they operate a transfer of the mineral rights and privileges.”
In our opinion the principle of law applied in the above cited cases should be applied here. The joint adventure alleged to have been entered into between plaintiffs and defendant was a personal agreement to invest funds and to share in the profit or loss from those investments. The fact that the *186 funds were intended to be and were used to purchase mineral leases and royalties is immaterial. The title to the property which was purchased and later sold pursuant to this joint adventure is not, and cannot be, affected by the issues presented here. For that reason we think parol evidence is admissible to prove the alleged verbal contract of joint adventure, and that upon establishing the facts alleged in the petition plaintiffs would be entitled to judgment ordering defendant to make an accounting of all profits earned pursuant to such joint adventure. We conclude, therefore, that the trial court erred in maintaining the exceptions of no right and no cause of action filed herein.
For the reasons herein assigned, the judgment of the trial court is reversed, the exception of no right or no cause of action filed herein is overruled, and the case is remanded to the district court for proceedings consistent with the views herein expressed.
Reversed and remanded.
En Banc.