BAILES, Judge.
Plaintiffs, Robert B. Prentice and M. H. Marr, became the record owner of a certain oil, gas and mineral lease granted by Mrs. Octavia Robertson Landry, et al. to Leo J. Caballero, dated January 29, 1960, affecting the western most 100 acres of Voiron Plantation situated in Assumption Parish. At the time Caballero was granted this lease it was what is known as a *754 top lease subordinate to the lease cancelled in suit entitled Landry et al. v. Flaitz et al., reported in 245 La. 223, 157 So.2d 892. Plaintiffs were assigned the lease which is the subject of this litigation by Caballero after the termination of Landry v. Flaitz, supra.
This is an action wherein plaintiffs are seeking a declaratory judgment recognizing them to be the owners of the lease the Landrys granted to Caballero as against the claim of defendants, Amax Petroleum Corporation and R. B. Mitchell.
Additionally, plaintiffs seek a declaratory judgment against Callery Properties, Inc., and Pan-American Petroleum Corporation decreeing these defendants without right or authority to withhold from plaintiffs the proceeds of production attributable to the oil, gas and mineral lease described above, and further, decreeing Amax and Mitchell without authority to receive said proceeds, and for an accounting of the receipt of proceeds of production as well as drilling and operating costs .attributable to said lease, and for other associated relief not necessary to detail herein.
Subsequent to the filing of defendants’ answers, plaintiffs moved for summary judgment alleging “that, as will appear from the pleadings and the attached affidavits, there is no genuine issue as to any material fact in this case, and that plaintiffs are, therefore, entitled to a summary judgment * * * as prayed for in ■their petition.
By their petition, plaintiffs claim ownership of the subject lease by assignment from Caballero; that through the cancellation of the lease in Landry v. Flaitz, supra, plaintiffs became entitled to the production of the well drilled under an operating agreement to which Amax and Mitchell were parties; the cancellation of the lease by judgment of the Supreme ■Court of this state in Landry v. Flaitz, ■supra, was a title failure as defined by the •operating agreement, which title failure was effective as of March 30, 1960; demand had been made on Callery and Pan-American for the portion of the production of said well attributable to the subject lease, but without avail.
After answering the demands of the plaintiffs as articulated in their petition, defendants Amax and Mitchell further answered by alleging the existence of three operating agreements dated respectively April 15, 1957, March 15, 1960 and October 6, 1960, by virtue of which a relationship of joint adventure between plaintiffs, defendants and others had been created; the discovery well of the unit of acreage involving subject lease was drilled by the joint adventure so created; the “plaintiffs, and plaintiff Prentice’s employee, Leo J. Caballero, entered into a plan or combination designed to unjustly enrich plaintiffs by acquiring a top lease on defendants’ 1957 lease and procuring the termination of defendants’ lease so as to make the top lease become effective, said plan being in violation of the fiduciary obligations owed by plaintiffs to defendants; all of the details of said plan are peculiarly within plaintiffs’ knowledge, except to the extent that they are disclosed by the documents hereinafter referred to.”
Plaintiffs attached to their petition a copy of the lease the Landrys granted in favor of Caballero, the act of assignment from Caballero to the plaintiffs, a copy of the operating agreement of March 15, 1960, of October 6, 1960, and of April 15, 1957. In the record, we find a letter from Caballero to the Landrys acknowledging the existence of the top lease and setting forth an additional consideration in the event the top lease becomes effective against the property. Additionally, there are three affidavits filed by the defendants. These are the affidavit of Gordon L. Lewis, attesting to the lack of knowledge on the part of Callery of the ownership claim of plaintiffs to subject lease; affidavit of defendant, R. B. Mitchell, as to the plan of plaintiffs to “freeze out” defendants Amax and Mitchell by not agreeing to a *755 voluntary unit for the production of oil from the well drilled under their operating agreement, and the acquisition of the Landry lease by Caballero; and the affidavit of H. H. Hillyer, Jr., attesting to the plan of plaintiffs to liquidate defendants Amax and Mitchell from the Landry lease through the acquisition thereof by Caballero.
In the judgment of the trial court, the trial judge stated:
“On motion for summary judgment the following facts are revealed by the records introduced:
“1. On March 29, 1957, some of defendants herein secured an oil and gas lease on the land herein concerned. This lease had a primary term expiring on March 29, 1960.
2. On April 15, 1957, plaintiffs and defendants herein entered into an oil and gas lease operating agreement. The land herein concerned, although under lease to defendants, was not included in this agreement.
3. On January 25, 1960, an oil well was completed on land covered by the operating agreement.
4. On January 29, 1960, one Leo J. Caballero secured an oil and gas lease on the land herein concerned. Said Caballero secured the lease as agent for plaintiffs herein and for their benefit.
5. On March 28, 1960, the Commissioner of Conservation issued a forced pooling order under which a portion of the land herein concerned was unitized with lands covered by the operating agreement as Unit 9.
6. On June 8, 1960, Caballero, acting as agent for plaintiffs, contracted with the owners of the land herein concerned to institute legal proceedings, all at the agents expense, to have the lease granted defendants cancelled.
7. On July 27, 1960, such an action was filed.
8. On October 6, 1960, plaintiffs and defendants entered into an operating agreement for Unit 9 and plaintiffs stated in said agreement that they had no leasehold interest on the land herein concerned and plaintiffs recognized that defendants had a leasehold interest on the lands herein concerned.
9. On November 12, 1963, the Louisiana Supreme Court ordered cancellation of the oil and gas lease granted to defendants on the land herein concerned. .
10. On December 13, 1963, Caballero filed for record the oil and gas. lease secured on the land herein, concerned on January 29, 1960.
11. On February 18, 1964, Caballero-assigned the oil and gas lease to-plaintiffs herein, said assigned’ (sic) to be effective as of January 29, 1960.
“Simply put, plaintiffs, knowing the-land herein concerned would be forced pool with lands covered by the 1957' operating agreement, secured a top-lease, which they kept secret. Contracted for and financed legal action-to cancel defendants lease, all of which they kept secret; entered into an operating agreement relative to the land herein concerned without divulging their interest, and, only after defendants’ lease was cancelled, did they file the top lease and assume title to said lease.”
Briefly stated, plaintiffs claim the ownership of the subject lease through assignment from Caballero and the proceeds of the production thereof because of the annulment of the prior lease by the Supreme Court as previously mentioned. Defend *756 ants Amax and Mitchell contend by reason of the operating agreements and the joint adventure evidenced thereby and the therein created fiduciary relationship between plaintiffs and defendants, the acquisition of the Landry lease by plaintiffs was in fact an acquisition for the benefit of defendants.
In granting summary judgment against defendants Amax and Mitchell recognizing plaintiffs as owners of the subject lease but otherwise denying the motion, the trial judge further stated:
“Now they want their rights recognized under a lease they kept undisclosed and secret for three years.
“This Court finds law that says the lease belongs to them and that parole cannot be employed to divest them of title: Prescott v. Prescott, 170La., 233,127So.611; Carter v. Loeber, 177La.444, 148So.673; Wier v. Glassell, 216La.828, 44So2882; Hayes v. Muller, 245La.356,l58So2191; Little v. Hack [Haik], 246La.121,163So2558. Accordingly, this Court must say that plaintiffs are owners of the oil and gas lease.
“However, this Court cannot find express law governing rights under a lease secured under clandestine conditions that smack of breach of trust and breach of obligations when related to contemporaneous agreements between the parties.
“Hence, the equitable consideration of the issues will refer us to C.C.Art. 21, thence to C.C.Art.1965 — ‘The equity intended by this rule is founded in the Christian principle not to do unto others that which we would not wish others should do unto us.’.
“Plaintiffs have an oil and gas lease. But, this Court will not be used to define nor enforce rights stemming for it.
“Accordingly, the motion for summary judgment is made absolute only and insofar as plaintiffs are recognized as the owners of that oil and gas mineral lease recorded in Oil and Gas Book 1S9-A, folio 213, of the Conveyance Records of Assumption Parish, Louisiana.
“All other demands of plaintiffs are dismissed at their cost.”
Whatever rights defendants Amax and Mitchell have in the subject lease must be based on the legal effect of the operating agreements which were the contracts between the parties evidenced by the written documents executed jointly by plaintiffs and defendants.
These documents must be examined to determine if there existed in writing a joint adventure between the parties and if the effect thereof was to create a fiduciary relationship.
In Hayes v. Muller (1963) 245 La. 356, 366, 158 So.2d 191, 194, the court stated:
“[2,3] * * * [A] joint adventure can properly be defined as a special combination of two or more persons who jointly seek a profit through a specific adventure without any partnership or corporate designation. McCann v. Todd, 203 La. 631, 14 So.2d 469 (1943); Emerson v. Shirley, 188 La. 196, 175 So. 909 (1937); Ault & Wiborg Co. of Canada v. Carson Carbon Co., 181 La. 681, 160 So. 298 (1935); Daily States Pub. Co. v. Uhalt, 169 La. 893, 126 So. 228 (1930)

In 30 Am.Jur. Joint Adventures § 6, page 942, the following comment is found:
“Whether persons have entered into a joint adventure depends largely upon the terms of the particular agreement, upon the construction which the parties have given it, as indicated by the manner in which they have acted under it, and upon the nature of the undertak *757 ing, as well as upon other facts. It may be stated in general terms that the relation of joint adventurers is created where two or more persons combine their money, property, or time in the •conduct of some particular line of trade, or for some particular business deal, agreeing to share jointly, or in proportion to the capital contributed, in the profits and losses, assuming that the circumstances do not establish a technical partnership.”
In 48 C.J.S. Joint Adventures § 5, page, &23, it is stated:
“Where a joint adventure is established, either by direct evidence of a mutual agreement to that end or by proof of facts and circumstances from which it is made to appear that such ■enterprise was in fact entered into, the law fixes the rights of the parties, and ■substantially the same principles that apply to a partnership govern the mutual rights and liabilities of joint adventurers in respect of their common ■enterprise. Thus, while it has been stated that it is necessary to estimate and define the mutual rights and obli•gations of joint adventures in the light of the particular facts involved and the character of the business or undertaking engaged in, joint adventurers ■may agree to fix their rights as they choose, and it is this agreement which governs the relationship, rights, and ■duties of the parties, inter sese, and not ■the contract constituting the subject of ■the venture.
^ sj? ‡ jJ:
■“b. Dut}"- to Exercise Good Faith
* * * * * *
“Where persons engage in a common enterprise by way of joint adventure, •each has the right to demand and expect from his associates the utmost •good faith, and is entitled to demand ■and expect fairness, honesty, integrity, and loyalty, in all that relates to their •common interests. Within the scope of the enterprise, they stand in a fiduciary relation, each to the other, or in a close relationship of trust and confidence, and are bound by the same standards of good conduct and square dealing as are required between partners. Each member of a joint adventure has the right to demand and expect from his associates full, fair, open, and honest disclosure of everything affecting the relationship.
* * * * * *
“c. Mutual Agency
* * s]s * * *
“As in a partnership, in respect to their mutual rights and liabilities, each member of a joint adventure has the dual status of principal for himself and agent for his associates, within the scope of the enterprise. Since a mutual agency exists, each has the right of control over the others, and an equal right to a voice in performing the agreement of joint adventure as well as in controlling the agencies used in its performance. One or more of the parties to the joint adventure may intrust performance to another, or others, but his rights in the ultimate result and his liabilities for negligent or wrongful performance remain the same.”
Again in 30 Am.Jur. § 52, page-, we find this pronouncement:
“Adverse Acquisition of Property. The fiduciary relationship between co-adventurers ordinarily precludes one of them from purchasing or leasing property related to the enterprise, either for himself or another, in the absence of a full disclosure to his associates.”
We are convinced from our perusal of these three operating agreements there is a genuine dispute of a material fact of whether the parties thereto entered into a joint adventure. These agreements provide for the pooling of leases within the designated *758 operating area, for the drilling of wells in search of oil, for the respective percentage of cost to be paid by each participating party thereto, and for the respective percentage of participation in any production derived from the oil wells. In addition thereto, there are a number of conditions and provisions of the operating agreements which depend on the good faith and integrity of the contracting parties, such as the acquisition of other leases within the operating area to be shared by all other parties to these agreements, the covenant not to surrender, let expire, abandon or release, in whole or in part, of any lease included in the pool, unless the parties mutually consent thereto in writing.
In the March IS, 1960 agreement, in the preamble thereof, the parties declared that they desire to execute this agreement for the joint development and operation of the Upper Cristellaria II Sand Unit 10; and in Article 4 thereof, the parties declared (a) The respective rights of Operator and Non-operator are hereby pooled and unitized insofar as operations, etc. and all such operations on the pooled area shall hereafter be conducted for their joint account and benefit; the respective percentage of costs and expenses to be borne and paid by the parties was provided for; the percentage of production attributable to each party was provided, etc.
In the agreement of October 6,1960, R. B. Mitchell and American Metal Climax, Inc., assignor of Amax represented they owned the lease on the Landry property, and plaintiffs, R. B. Prentice and M. H. Marr expressly agreed they owned no leasehold interest in the Landry property; and agreed R. B. Mitchell and American Metal Climax, Inc., only own a leasehold interest in the Landry property, however the participation of each party to this agreement as therein set out is based not only on the leasehold ownership but also take into account the ownership of production figures contained in the April IS, 1957 operating agreement.
LSA-C.C.P. Article 966 provides:
“ * * * The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law.”
 The burden of showing that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law are on the plaintiffs herein. Any reasonable doubt of whether the summary judgment should be rendered must be resolved against him who seeks the summary judgment. See Perry v. Reliance Insurance Co. of Philadelphia (La.App.1963) 157 So.2d 903; Spencer v. Traders and General Insurance Co. (La.App. 1965) 171 So.2d 723; Kay v. Carter (1963) 243 La. 1095, 150 So.2d 27; Wilkinson v. Husser (La.App. 1963) 154 So.2d 490; Touchet v. Firemen’s Insurance Co. of Newark, N. J. (La.App. 1962) 146 So.2d 441; Gym Master Company v. Pool (La.App. 1963) 157 So.2d 738, and the authorities therein cited.
We find from our examination of the offerings of plaintiffs and defendants in the record there is a genuine dispute as to material issues of fact. It is not for us in this proceeding to make final judgment on: the merits of the issues between the parties.
The trial court was in error in granting-the motion for summary judgment. It necessarily follows that with our holding the trial court erred in granting summary judgment, such a judgment cannot be granted" for an accounting by defendants, Callery and Pan-American, to plaintiffs. The denial of the motion for summary judgment, against defendants, Callery Properties, Inc.,, and Pan-American Petroleum Corporation, is correct.
For the foregoing reasons, the judgment of the trial court is reversed insofar as it granted the summary judgment declaring the Landry lease the property of plaintiffs, and in all other respects the judgment is *759 affirmed, at plaintiffs’ cost. This case is remanded to the lower court for further proceedings according to law and not inconsistent herewith.
Affirmed in part, reversed in part and remanded.